**CITY OF HOUSTON et al. v. WYNNE et al.***

(No. 885.)

(Court of Civil Appeals of Texas. Galveston. Nov. 12, 1925. Rehearing Denied Dec. 17, 1925. Concurring Opinion Jan, 7, 1926.)

**1. Appeal and error ⬤⟿417(2)—Notice of appeal by city's attorneys held to perfect appeal of city.**

Where, in suit against city and contractor to enjoin erection of fire engine house, notice of appeal from order granting temporary injunction was given by attorneys for city, without specifying which defendant gave such notice, *held* appeal of city was perfected.

**2. Appeal and error ⬤⟿165—Motion to dismiss injunction did not defeat right to appeal from order granting it.**

Where city perfected appeal from order granting temporary injunction, its subsequent motion to dissolve such injunction did not waive or abandon its right to appeal.

**3. Appeal and error ⬤⟿876—Appeal from refusal to dissolve injunction brought injunction and motion before appellate court.**

Where court refused to consider motion to dissolve temporary injunction, on ground that appeal from motion granting it had been perfected, and jurisdiction of appellate court had attached, and notice of appeal from court's action in such refusal was given, injunction and proceeding relative to such motion were brought before appellate court in record.

**4. Eminent domain ⬤⟿177—City could condemn lots of addition reserved for residences without joining owners of other lots.**

Where all lots in addition to city were sold with provision that they were not to be used except for residence purposes, and city condemned two of them for purpose of erecting fire engine house, owners of other lots did not have any interest or ownership in those condemned which required city to make them parties to condemnation proceeding.

**5. Evidence ⬤⟿65—Purchasers of lots held charged with knowledge of city's right of eminent domain.**

Where purchasers of group of lots all agreed not to use them except for residence purposes, such purchasers were charged with knowledge of law allowing condemnation of land for public buildings, and it must be assumed they took such lots, knowing the agreement

would not affect right of city to take them and build fire station thereon.

**6. Eminent domain ⬤⟿275(2)—Damage to nearby landowners did not justify restraining city from building fire station.**

Where purchasers of group of lots all agreed to use them only for residence purposes, fact that erection of fire station on two of them would work injury to owners of others would not justify restraining of city from taking property for such public use, although city might be made to respond in damages.

**7. Eminent domain ⬤⟿82—Agreement to use lot for residence gave no ownership in other lots sold with same agreement, as term "owner" is used in constitutional provision as to taking.**

Where vendor sold all lots of an addition on agreement that their use should be for residence purposes only, purchaser of one did not become owner of any interest in others by virtue of such agreement, as the term "owner" is used in Const. art. 1, § 17, which relates to taking of property.

**8. Eminent domain ⬤⟿63, 82—"Taking of property" for public purpose explained.**

In constitutional provision as to compensation for property taken for public use, "property" includes fee-simple title to thing owned, whether burdened with easement or not, and "taken" includes appropriation of such title or some interest or estate therein by actual, physical possession.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Taking (In Eminent Domain).]

**9. Eminent domain ⬤⟿45—Restriction on lots impairing city's right to condemn for public use held against public policy.**

Where lots of an entire addition were sold on agreement that they should be used for residence purposes only, such restriction on their use was contrary to public policy and void, in so far as it in any way restricted or impaired right of city to condemn any of them for fire station purposes.

Appeal from District Court, Harris County; Ewing Boyd, Judge.

Suit for injunction by John H. Wynne and others against the City of Houston and another. From a judgment for plaintiffs, defendants appeal. Reversed, and dissolution of judgment ordered.

Sewall Myer, City Atty., and J. H. Painter, Asst. City Atty., both of Houston, for appellants.

Homer Stephenson, of Houston, for appellees.

LANE, J. Eastwood addition, an addition to the city of Houston, and which is within the corporate limits of said city, was laid out and platted by its promoters. A map of such plat was duly placed of record, on or about the 31st day of January, 1913. Attached to this plat was a recital of certain restrictions

(279 S.W.)

which should apply to all lots in said addition, among which was that none of the lots should be improved, used, or occupied at any time within 25 years for other than residential purposes. There are, according to said plat, about 1,500 to 2,000 lots in said addition. Since the addition was made, nearly, if not all, of such lots have been sold and are now owned by about 1,500 different persons. In each of the deeds, by which the promoters of the addition conveyed these lots, all the restrictions as set out in the plat of record were recited, and, in addition thereto, it was expressly stipulated in each of said deeds that—

"The grantee accepts the conveyance subject to the restrictions, easements, and conditions above set forth, which it is agreed shall be deemed to be covenants running with the land, and for his heirs or assigns covenants to and with the grantor and its assigns, that he will, and that his heirs and assigns shall, forever faithfully observe and perform said several restrictions and conditions and each of them."

By one of the deeds above mentioned, lots 4 and 5 in block 43 of said addition were conveyed to one Fred Murch. The city of Houston, by regular condemnation proceedings instituted against Fred Murch, the holder of the legal title to lots 4 and 5 in block 43, condemned said lots for the purpose of erecting thereon a fire engine house, to the end that the properties of the city of Houston might be protected against fires. After such condemnation proceedings, the city had contracted with one L. E. Menely for the erection of said fire engine house. In such condemnation proceedings, no one but Fred Murch was sued.

After said condemnation and after said contract with Menely was entered into, John H. Wynne, Mrs. Florence M. Lingo, and James E. Smith, appellees herein, filed suit to restrain the city of Houston and L. E. Menely, the contractor, from erecting a fire engine house on said lots 4 and 5, which had been regularly condemned as against Fred Murch, as the sole owner thereof.

Plaintiff alleged substantially that, by reason of the restriction in the original platting of said addition, and in the deeds of each of the purchasers of lots in said addition, each owner of a lot in such addition became the owner of property rights in each and every lot in the addition, and that therefore, they were necessary parties to the condemnation proceedings, and that such proceedings against Murch alone were insufficient to pass their interest in the lots to the city for fire station purposes; in other words, that the city was attempting, by their condemnation suit against Murch alone, to take their property without making them parties to the suit and paying them for their property rights in said lots, in advance of the taking. They also allege that they are the owners of lots, which are parts of block 43, which they occupy as their respective homes, and which lie adjacent to lots 4 and 5 involved in this suit, and that, if appellees are permitted to erect a fire station building and operate it on said lots 4 and 5, their said homes will be thereby greatly damaged.

The petition of the plaintiffs was presented to the trial court on the 15th day of August, 1925, and thereupon the court made the following order:

"August 15, 1925.

"The foregoing petition for injunction being considered, it is ordered that the clerk of the district court of Harris county, Tex., issue notice to defendants to appear in the Fifty-Fifth district court Monday the 17th day of August, 1925, to show cause why the relief prayed for in the foregoing petition should not be granted. Same will be heard at 10 a. m. on said date.

"Ewing Boyd, Judge."

On the 17th day of August, 1925, the court granted the injunction prayed for, pending final hearing of the plaintiffs' suit, or until further orders of the court, conditioned upon petitioners executing a bond to the defendants in the sum of $1,000. In the order granting such injunction, it is recited that the defendants in open court excepted and gave notice of appeal to the Court of Civil Appeals, etc.

On the 26th day of August, 1925, Sewall Myer, city attorney of the city of Houston, and his first assistant, J. H. Painter, acting for the defendants, filed a motion praying for the dissolution of the injunction theretofore granted. The court considered said motion and refused to dissolve the injunction, holding that, as attorneys for the defendants had given notice of appeal from the judgment granting the temporary injunction, and as no appeal bond is required under the law of the city as a prerequisite to perfecting an appeal, the jurisdiction of the appellate court had attached, and that the trial court had lost jurisdiction over the matter, and was without authority to pass on the petition to dissolve the injunction. In the order overruling said petition, it is recited that "the defendant" then and there gave notice of appeal, etc.

A record containing all the proceedings, relative to both the granting of the injunction and the overruling of the motion to dissolve the same was filed in this court on the 2d day of September, 1925, and is now properly before us for consideration. At the outset we are met by a motion of appellees to dismiss this appeal, which is as follows:

"I. The record shows upon its face that defendants in the court below gave notice of appeal from the order of the court granting the temporary injunction herein, but have waived and abandoned their right of appeal in respect thereto, by filing in the lower court a motion to dissolve said temporary injunction granted by the lower court after service had upon the parties and after a hearing in open court had been concluded, and by one of said defendants

giving notice of appeal from the order refusing to dissolve said temporary injunction, without specifying which defendant gave such notice.

"II. Because the order overruling defendants' motion to dissolve, filed in the lower court, shows upon its face that same was entered because of want of jurisdiction of the lower court to entertain the same, and that notice of a hearing thereon was not given for the time and in the manner prescribed by law, in that said order does not purport to show that notice was given to appellees herein, and because in fact notice was not given to appellees or either of them as the law requires, and because appellees are not required to take notice of an application or motion to dissolve when notice of appeal had been duly entered by all defendants in respect to the original order granting the temporary injunction.

"III. The record fails to disclose notice of appeal by each of said defendants or either of them, so as to enable the court to determine which defendant, if either, did in open court give notice of appeal so as to confer jurisdiction herein.

"Said appeal should be dismissed, for the reason that the appeal, in the first instance, in respect to the order granting the temporary writ of injunction having been waived as aforesaid, and notice of appeal not given from the second order as required by law, and, if notice of appeal were given by him, the appeal having been abandoned by the contractor named in appellees' petition, who was to have performed the services and completed the fire station, and failure of such defendant to perfect his appeal being such as to render judgment against him final, and thereby causing or requiring the city of Houston by ordinance to enter into a new contract with another party which the city of Houston may or may not do, the subject-matter of the litigation, so far as this appeal is concerned, has been settled and determined, and the issues involved herein rendered moot and prospective merely."

[1] We overrule the motion. We think it is clearly disclosed by the record before us that the city of Houston was represented by City Attorney Myer and Assistant City Attorney Painter throughout the litigation, and that they, for the city, gave proper notice of appeal from the judgment granting the temporary injunction, and that thereby the appeal of the city was perfected from such judgment.

It is also shown that, after the appeal had been perfected by the city from the judgment mentioned, counsel for the city presented to the court its motion to dissolve the injunction theretofore granted; that the court refused to consider said motion, upon the grounds that it had no jurisdiction over the subject-matter, as the jurisdiction of the appellate court had attached by reason of the notice of appeal given by the city. From the refusal of the court to consider said motion, the city gave notice of appeal.

[2] We cannot sustain appellees' contention as to the effect of the. motion to dissolve on this appeal, which, as already shown, was duly perfected. The entire proceedings of the trial court, relative to the litigation, has been in due time and manner brought to this court for review. Jeff Chaison Town Site Co. v. McFaddin, Wiess & Kyle Land Co., 56 Tex. Civ. App. 611, 121 S. W. 716; Young v. Dudney (Tex. Civ. App.) 140 S. W. 802; Miller v. City of Ballinger (Tex. Civ. App.) 204 S. W. 1173; Birchfield v. Bourland (Tex. Civ. App.) 187 S. W. 422; Houston Electric Co. v. Glen Park Co. (Tex. Civ. App.) 155 S. W. 965. In the case last cited, this court, speaking through Judge McMeans, said:

"We are met in limine with a motion filed by appellee, Glen Park Company, to dismiss the appeal herein, on the ground that the appellant by filing in the district court its answer, consisting of demurrers and special pleas in bar which were also in the nature of a motion to dissolve, had waived the right conferred upon it by the statute to appeal from the order granting the temporary injunction. We are of the opinion that the motion should be overruled, and it has been so ordered. The statute gives the unqualified right of appeal from an order granting a temporary injunction. The only limitation thrown around the appellant is as to the time in which the record on appeal must be filed in the appellate court. The law gives him 15 days from the date of the entry of record of the order granting the injunction within which to file the transcript on appeal in the Court of Civil Appeals, and, when he has done this, after duly complying with the other requisites of appeal, such as giving bond, etc., the right of appeal becomes a fixed right, and cannot be defeated by any effort he may make to have the injunction dissolved in the court below. Jeff Chaison Town Site Co. v. McFaddin, 56 Tex. Civ. App. 611, 121 S. W. 717; Young v. Dudney (Tex. Civ. App.) 140 S. W. 806."

Writ of error was denied in said case.

[3] If, however, we are in error in what we have said in support of the validity of the appeal from the judgment granting the injunction, we are nevertheless of opinion that the real subject-matter involved is before us for consideration, as the city gave notice of appeal from the action of the court in refusing to consider its motion to dissolve the injunction, and the proceedings relative to said motion are timely brought before us in the record.

[4] The effect of the contention of appellant, the city of Houston, is that an injunction should not have been granted, restraining it from taking the lots in controversy by the exercise of its power of eminent domain upon the applications of appellees, as they had no such interest in the property involved as would require the city, in its condemnation suit, to make them parties to such suit. The city also contends that the covenants in the deeds of purchasers of lots in the Eastwood addition, by which it was agreed by and between all such parties and with their grantor that no building other than a residence should be erected on any lot or lots in said addition, were void as to the right of the city to take lots under condemnation proceedings, for the

purpose of erecting a public fire station, in that such covenants are void as against public policy.

Reduced to its ultimate, the contention of appellees is that, by reason of the restrictions in the original plan of Eastwood addition, and the restrictions set out in the deed of each purchaser of a lot in such addition, every owner of a lot in such addition has an interest in lots 4 and 5 in block 43, taken by the city under its condemnation suit (that is, in the land itself), and that therefore said lots could not be taken by the city by its condemnation suit, against Murch alone, to whom the lots had been conveyed by one of the deeds above mentioned containing the restrictions mentioned; that said lots could not be taken under condemnation proceedings without making each and all owners of lots in such addition parties to such suit, and not then without paying each of them, in advance of the taking, the value of their interest in said lots. They do not contend that, had all such owners been made parties to the condemnation suit against Murch, and had they been paid the value of their asserted interest in the lots taken, such lots could not have been taken for the purpose intended by the city.

[5] We have reached the conclusion that the contention of appellees cannot be sustained, but, on the contrary, that it should be held that appellees had and owned no such rights in lots 4 and 5, as they claim, as against the right of the city to take them under its right of eminent domain for a public fire station. Before and at the time the covenants were entered into by which the appellees and all other lot owners in said addition and their vendor were bound, the statutes of our state empowered the city by condemnation suits against the owner of land to take so much thereof as it, in good faith, deemed necessary for the erection of a public fire station or other public buildings. All such contracting parties were charged with knowledge of such law, and hence it must be assumed, we think, that all such parties contracted understanding that the restrictions entered into between them, which were binding as between themselves and all private parties, did in no manner affect the rights of the city to take such lots as it needed for a public fire station, by virtue of the condemnation statutes. In other words, while it is true the plaintiffs purchased their lots subject to the restrictions mentioned in the deeds by which they and other purchasers of lots in said addition, obtained the negative easement mentioned in their favor, which added materially to the value of their lots for residential purposes, yet those restrictions in no manner militated against the power or authority of the city to take property within the addition for proper public use, although such taking and use might damage lots purchased by them for residential purposes.

[6] The easement or restrictions contracted for were to prohibit all persons, but not the state or some subdivision thereof, from using any of the lots for purposes other than for residences. Of course, if the city should erect an objectionable building upon the property so taken, which would necessarily work injury to the properties of the plaintiffs, it might be made to respond in damages for the injury done, whether done in violation of the restrictions or not, but that damage might result from the erection of such public building would not be cause justifying the restraining of the city from taking the property for a public purpose.

If, however, we are in error in holding that purchasers of lots in the addition other than lots 4 and 5 got no interest by reason of the restrictions mentioned in lots 4 and 5, as against the right of the city to condemn them for public purposes, there are still other reasons why appellees' contentions should not be sustained.

[7] It is not, nor can it be, reasonably contended by appellees that by their deeds, or by the deed of any other purchaser of any lot in the Eastwood addition, any part of the soil in lots 4 and 5 was expressly or otherwise conveyed to them or either of them, or that such deeds had the effect to convey to either of them a passageway over or any other right of user thereof. It was evidently not intended, by the restrictions mentioned, to give to the purchasers of other lots any actual use of any part of lots 4 and 5, which were conveyed to Murch. It is evident, we think, that the purpose of inserting the restrictions in the deeds was to prevent the owner or purchaser of any lot from placing thereon anything forbidden by the restrictions, which, in the judgment of the original vendor, might damage or depreciate the value of other lots in the addition as residential property.

The restrictions conveyed no affirmative rights. They are only such as are usually known as negative rights, by which those entitled thereto might prevent the owner of other lots from using their lots so as to cause damage to lots owned by them, which might be the result of doing those things forbidden by the restrictions. There is nothing in the restrictions stated in the original plan of the Eastwood addition, nor in any of the deeds of purchasers of lots therein, which directly or impliedly conveys to such purchasers any interest in any lots purchased by another. Such restrictions are strictly restrictions against the purchaser of a lot, by which he obligates himself to all owners of other lots in the addition to refrain from doing those things specially forbidden in the deed under which he holds. Such deed, we think, cannot be reasonably construed as a conveyance to them of any interest in the lots or lands conveyed to another.

We have reached the conclusion that appellees were not the owners of any interest in

lots 4 and 5 in block 43, upon which the city proposed to erect a fire station, as the term owner is used in article 1, § 17, of the state's Constitution, and that appellees have not shown the invasion or threatened invasion of any of their rights entitling them to the right of the injunction granted by the trial court.

Repeating: It may be and doubtless is a fact that the proper construction and maintenance of a fire station near the residence of appellees will result in a certain amount of damage thereto. This result would, however, follow, whether such residence was or was not in a restricted district, but, if each resident may enjoin the construction and maintenance of a fire station near to or on lots adjacent to his residence, on the ground that such erection and maintenance would damage their property, then indeed the city would be powerless to erect a fire station in any part of the city.

[8] In McCammon & Lang Lumber Co. v. Trinity & B. V. Ry. Co., 104 Tex. 8, 133 S. W. 247, 36 L. R. A. (N. S.) 662, Ann. Cas. 1913E, 870, our Supreme Court held that, in the constitutional provision as to compensation for property taken for public use, the term "property" includes the fee-simple title to the thing owned, whether it be burdened with an easement or not, and that the term "taken" includes the appropriation of such fee-simple title or of some interest or estate in such fee-simple title, by actual, physical possession. See Wharton v. United States, 153 F. 876, 83 C. C. A. 58.

On pages 66 and 67 R. C. L. vol. 10, it is said that it has been held that any use of land for a public purpose, which inflicts an injury upon adjacent land such as would have been actionable by a private owner, is a taking within the meaning of the Constitution, and cannot be authorized by the Legislature without compensation, but that such doctrine has not been generally accepted as a proper judicial construction of the limits of the constitutional powers of the Legislature, and that it is almost universally the law that, in the absence of any unjustified entry upon land of which the fee is held by a private owner, the construction and maintenance of a public improvement under legislative authority in such manner as to inflict an injury upon adjacent land, which would be actionable without such authority, is not a taking of such land, unless the owner is substantially ousted and deprived of all beneficial use of the land affected.

[9] There is still another reason for holding that appellees' contention should not be sustained; that is, that the restrictions, in so far as they seek to in any manner restrict or impair the right of the city of Houston to condemn land in the addition for fire station purposes, are contrary to public policy and void.

In West Virginia Transportation Co. v. Ohio River Pipe Line Co. et al., 22 W. Va. at page 625, 46 Am. Rep. 527, it is, in substance, said that:

"Whenever the Legislature by statute law has authorized any person or corporation to condemn the lands of others in order to carry on its business, the courts will regard this as a legislative declaration that this character of business is such as that the public has so great and direct an interest in that the courts must hold it contrary to public policy to permit any restriction of it by private contract."

Appellees' contention, if carried to its extreme, is that, if there was an addition to the city in which there were 10,000 lots, the city would be required to serve the owner or owners of each lot in a suit to condemn any one of such lots for public purposes. Such contention, if established as the law governing such matters, would be practically to prohibit the city from condemning property so situated for public use; it would at least greatly restrict the rights of the city to condemn property for public purposes. It is apparent that, if it could not do so in cases where the owners of lots are 10,000 or more in number, it could not do so when they are 1,000 or 1,500 in number.

We cannot bring ourselves to the conclusion that the makers of the Constitution intended that section 17 of article 1, should apply to persons who might own such negative easements as the plaintiff in the present case.

Having reached the conclusions above expressed, it becomes our duty to reverse the judgment of the trial court and to here order a dissolution of the judgment granting the injunction against the city of Houston, and it is accordingly so done.

Reversed and rendered.

PER CURIAM. Rehearing denied.

GRAVES, J. (concurring). Both upon original submission and rehearing I have agreed to the judgment in this cause on the proposition that the public authority, as exercised through the right of eminent domain in the city of Houston, overrides these restrictions arranged between private parties; beyond that, I do not desire to be committed to the opinion of the court.