**Mario PALAFOX et al., Appellants,**

v.

**W. E. BOYD et al., Appellees.**

**No. 5763.**

Court of Civil Appeals of Texas.

El Paso.

Jan. 12, 1966.

Richard Yetter, El Paso, for appellants.

Travis White, City Atty., Wade Adkins and Daniel Garbern, Asst. City Attys., Morris Galatzan, El Paso, for appellees.

CLAYTON, Justice.

This appeal was perfected from a judgment of the District Court of El Paso County, Texas. Plaintiffs below (appellants here) had purchased lots in the Crown Point Addition to the City of El Paso, Texas. These lots all fronted on a cul-de-sac and were Lots 40, 41 and 43. Defendants below (appellees here) were the owners and successors in interest of the owners of Lot 42, lying between Lots 41 and 43, and also facing on the cul-de-sac. The City of El Paso, Texas was made a party defendant and the prayer was for a temporary restraining order preventing the other defendants from deeding to the City of El Paso, and the latter from accepting, a deed to Lot 42 to be used as a public thoroughfare, and for declaratory judgment as to the rights of the parties herein. While the cause was pending, the City of El Paso accepted the deed from the then owners of Lot 42.

Under date of April, 1955, what was termed a "replat of Crown Point Addition" was drawn and executed by the developers, which dedicated to public use the streets, drives and easements shown therein, and this plat was approved by the City Planning Commission of the City of El Paso, approved and adopted by the City, and filed of record. Subsequent thereto, in 1958 and 1959, and in apparent reliance on this plat showing the streets, drives and easements dedicated in said addition, the plaintiffs bought their lots and built residences thereon. This plat showed their lots, and Lot 42, as fronting on the cul-de-sac, or turn-around, or dead-end street, as it is variously called. It was not until 1958, when one of the plaintiffs was building his house, that the plaintifs learned that Lot 42 was going to be a street, but they "didn't get excited about it at that time" and "just let it go until such time that something was going to be done about it". Then, as stated, after this suit was filed and was pending, the City accepted from the then owners a deed to Lot 42 for street purposes. At a hearing before the court it was agreed that the hearing would be on the merits and for injunctive relief, and that final judgment on the whole case would be rendered. After hearing, the court denied all relief prayed for by plaintiffs and ruled that the defendant, City of El Paso, had the right to use the property in question, Lot 42, as a public street; that the dedication thereof for street purposes was lawful and did not infringe on any rights of the plaintiffs; and that damages suffered by plaintiffs, if any (such as loss of privacy, additional traffic and possible flooding), were damnum absque injuria.

As agreed by both parties in their briefs, "The basic question that is being determined in this appeal is whether an owner of property, that has been subdivided, platted and submitted to the City Planning Commission of the City of El Paso under the applicable statutes concerning the creation of subdivisions, Article 974a Vernon's Ann.Tex. Civ.St., can, subsequent to the acceptance

of said plat and after filing for record in the County Clerk's office, dedicate a building lot in said subdivision to the City to be used for a roadway". We have determined that such question must be answered in the affirmative.

It should be mentioned here with regard to appellants' points on appeal, that certain of them are based on a denied request for additional findings, the request for which came too late and cannot be considered here. Rule 363, Texas Rules of Civil Procedure, provides that an appeal is perfected when notice of appeal is given and bond has been filed. In the instant case, notice of appeal was given on January 15, 1965 and cash bond was given on January 29, 1965. The request for additional findings was made on February 12, 1965, by which time jurisdiction over the matter had vested in this court and the trial court was without jurisdiction to make such findings. 3 Tex.Jur. 597, § 340; Ammex Warehouse Company v. Archer, 381 S.W. 2d 478, 482 (S.Ct., 1964). Also, the filing of such request for additional findings was not timely under Rule 298, T.R.C.P.; Century Indemnity Company v. First National Bank, 272 S.W.2d 150 (Tex.Civ.App., 1954, n. w. h.). For these reasons, appellants' Points One through Four, complaining of the trial court's refusal to make certain findings, are overruled. However, it may be taken as undisputed that Crown Point Addition was platted in accordance with statutory requirements, but that the later dedication of Lot 42 as a public street did not meet the requirements of § 5 of Art. 974a V.A.T.S., and that such requirements did not have to be met, on the theory that such dedication did not constitute a vacation of the original plat or replat of said addition. This section (§ 5) requires that when lots have been sold in an addition, a vacation of said plat or replat, or any part thereof, may only be accomplished upon the application of all the owners of lots in said plat or replat with the approval of the City Planning Commission or the governing body of the City. This brings us back to the basic question stated above—whether an owner of property, that has been subdivided, platted and submitted to the City Planning Commission of the City of El Paso under the applicable statutes concerning the creation of subdivisions, Article 974a, V.A.T.S., can, subsequent to the acceptance of said plat and after filing for record in the County Clerk's office, dedicate a building lot in said subdivision to the City to be used for a roadway.

This question must be answered by use of analogy, since there seems to be no Texas authority directly on the point. At the outset, the persuasiveness of appellees' argument as contained in their brief against a negative answer to the stated question is at once apparent:

"* * * The Appellants' theory is that because of this statute a *new* street —*additional* to the streets shown on the filed plat—cannot be opened without consent of all the lot owners. This idea is quite novel and we have found no case exactly in point.

"One is struck with the far-reaching, even disastrous, consequences of such a theory. The State and the cities have long been engaged in extensive road and street building programs. A new highway in a city will usually pass through many platted subdivisions. Many of these subdivisions are large, including areas far from the new street. If opening a new street is a vacation of the plats through which it extends, the consent of hundreds, often thousands, of property owners would have to be obtained. In actual practice any major street program would be a sheer impossibility."

Appellees, later in their brief, point out that "platting cannot abrogate the power of the State (or a political subdivision to which the State delegates the power) to acquire land for public use. This is obvious from considerations of public policy and from the decisions on the analogous situations aris-

ing under deed restrictions." Appellees then cite the cases of City of Houston v. Wynne, 279 S.W. 916 (Tex.Civ.App., 1926), and City of River Oaks v. Moore, 272 S.W.2d 389 (Tex.Civ.App., 1954; ref., n. r. e.). When the Wynne case (supra) was before the Texas Supreme Court, 115 Tex. 255, 281 S.W. 544, that court said, per curiam:

"In our opinion the covenants in the dedication and in the deeds cannot be construed as intended to in any wise limit or affect the police power of the state acting through the city. For that reason the purchasers of lots acquired no interest not subordinate to the right of condemnation exercised in this case for the protection of the persons and properties of the inhabitants of the city against fire.

"The property embraced in the Eastwood addition is necessarily in the city of Houston and subject to the lawful exercise of all governmental power, and no valid contract could be made which would restrict the right on the part of the municipal authorities to exercise the police power of constructing and maintaining fire stations, and the contracts in this case cannot be properly construed as having the purpose to set aside, nullify, or prevent the exercise of governmental authority."

On the precise question of whether the owner of what appeared to be a residential building lot on the plat of a subdivision can later dedicate the lot to the city' for a new street in said subdivision without thus constituting a vacation of the plat and invoking the provisions of Art. 974a V.A.T.S., we are cited to no Texas cases nor have we been able to find any. Appellees cite us the 1956 decision of the Supreme Court of Appeals of West Virginia in State ex rel. Wells v. City of Dunbar, 142 W.Va. 332, 95 S.E.2d 457. That case involved a situation where the City of Dunbar had instituted condemnation proceedings against a lot in a subdivision having restrictive cove-

nants for the purpose of building a toll bridge. The condemnation proceedings were dismissed when the City acquired the lot by deed from the owners, but the owners of an adjoining lot sued for compensation in damages claiming that the use to which the acquired lot was to be put violated the covenants binding owners of lots in the subdivision to use the "property exclusively for residence purposes and not conduct thereon any business", and that this covenant created certain vested rights in the owners and that the construction of the toll bridge constituted a taking or damaging of such rights. The court, after quoting at some length from City of Houston v. Wynne, supra, went on to hold, 95 S.E.2d at page 461:

"We find ourselves in accord with the view that covenants of the nature of those here involved should not be so construed or applied as to require the government, or one of its agencies, in the taking or acquiring of private property for a governmental use, to respond in damages either on the theory of a taking of a vested right, or for breach of such a covenant. To hold otherwise would enable those having title to real estate often to greatly inconvenience and, perhaps, defeat the proper and orderly exercise by the government of the right of eminent domain, guaranteed to it by the Constitution, and absolutely necessary for the operation of the government in a manner best for the interests of all its citizens. No few citizens should be permitted to so contract as to destroy, or make prohibitive to the government, the right to acquire property for necessary governmental purposes. As pointed out in the cited cases, those who enter into such covenants do so with the knowledge that the government has the absolute right to acquire lands for governmental purposes, and they can not be presumed to have intended an interference with such right.

"The precise question involved has not been previously determined by this Court.

**950**

Admittedly, the holding may in some cases cause injury to those having the benefits of such covenants, but we think such injuries are damnum absque injuria. Such damages, in most cases at least, would not be damages done directly to the property of claimants, but would amount only to a theoretical reduction in value. In most cases, at least, such damages would be problematical, requiring daring speculation as to the amount thereof."

See also Gremillion v. Rapides Parish School Board, 134 So.2d 700, 702 (Court of Appeal, Louisiana, 1961).

Nor are we in accord with appellants' contention that what we have said above may apply in condemnation cases but would not be applicable here, where there was a conveyance by a private citizen to the City of property to be put to public use. In neither the Texas case of City of River Oaks v. Moore, cited above, nor in the West Virginia case reviewed, was the property acquired by condemnation proceedings. As we said in El Paso County v. City of El Paso, 357 S.W.2d 783 (n. w. h.): "We do not find * * * that it is necessary to either institute or threaten condemnation proceedings * * * the important thing being that the agencies involved have the authority to condemn * * *."

■ Appellants' last two points of error attacked the trial court's findings that any damage the plaintiffs may have suffered by reason of the change in the use of Lot 42 from a building site to a public street was damnum absque injuria, and that since the conveyance and acceptance of Lot 42 as a public street was accomplished by formal deed, it was unnecessary to decide whether it had become a public street at some prior time by oral, informal or implied dedication. On the damage issue, the court in the City of Dunbar case, discussed above, held such damages to be damnum absque injuria, and we see no reason why the same holding would not be equally appropriate in the instant case. Nor do we perceive any merit in the last point of error, since if we are

correct in adhering to the effectiveness of the formal deed to the City and dedication of Lot 42 as a street, this became an established fact prior to the trial of the case on its merits.

We have not attempted to discuss all points of error seriatim, but we have carefully examined and considered each point and are constrained to overrule them all.

Finding no error in the judgment of the trial court, the same is in all things. affirmed.