**CITY OF HOUSTON, Appellant,**

v.

**Glenn H. McCARTHY et ux., Appellees.**

**No. 15711.**

Court of Civil Appeals of Texas, Houston (1st Dist.).

Feb. 4, 1971.

Rehearing Denied Feb. 25, 1971.

Second Rehearing Denied March 18, 1971.

William A. Olson, City Atty., Fred Spence, Senior Asst. City Atty., Houston, for appellant.

Charles Kipple, Houston, for appellees; Saccomanno, Clegg, Martin & Kipple, Houston, of counsel.

COLEMAN, Justice.

This is an appeal from a judgment entered on a jury verdict in a condemnation proceeding.

Appellant sought to condemn appellees' reversionary interest in a 24,735 square feet parcel of land located in the City of Houston. The principal controversy concerns the proper measure of damages for such a taking. Based on the jury verdict substantial damages were awarded. The judgment is reversed.

On March 14, 1956, appellees conveyed to the Harris County Flood Control District 1.651 acres out of the 10.143 acre tract of land on which appellees resided. The deed contained this language:

"But the above conveyance is subject to the covenant, hereby made by Grantee, and the conditions that the

Harris County Flood Control District, its assigns or successors in office, shall not for a period of 999 years burden the surface fee conveyed herein with any above ground fences, buildings or structures, such covenants and conditions to be binding upon and to be observed by the Grantee herein, as well as its heirs, executors, administrators, and assigns, and to run in favor of and be enforceable by any person who shall hereafter own any of that certain hereinabove described premises. And in case of and upon any violation or non-observance of the above covenants and conditions, and thereupon, the said conveyance shall be null and void, and the said premises shall then and there wholly and absolutely revert to the Grantors herein, their heirs or assigns; and no act or omission upon the part of any of the beneficiaries of this clause shall be a waiver of the operation or enforcement of either such covenants or such conditions."

The tract of land acquired by the Flood Control District ran along, and to the center of, Braes Bayou. It was used for drainage and flood control purposes. There is no evidence that the District had constructed, or contemplated constructing in the future, any fences, buildings, or structures above the surface of the ground.

In 1959, the City of Houston condemned 40,898 square feet of the McCarthys' land for an extension of North Braeswood Street. This property lay between the McCarthy property on the north and the tract previously conveyed to the Flood Control District on the south. August 30, 1960, was the date of taking of this property.

The City of Houston instituted condemnation proceedings against the Flood Control District and acquired an easement for street, road and highway purposes. The City deposited the amount awarded by the Commissioners on January 17, 1962, and subsequently took possession. Appellees were not made parties to this suit.

On November 16, 1961, this action was instituted. The Condemnation statement states: "The City Council of the City of Houston has heretofore determined the necessity for and ordered the acquisition by the City of Houston of the reversionary rights to the surface estate in and to the following described lot, tract or parcel of land * * *" Then followed a description of the 24,735 square feet of land out of the 1.651 acre tract deeded by the appellees to the Flood Control District. The City deposited $100.00, the amount of the Commissioners' award, into the registry of the court on January 4, 1962.

On December 28, 1961, appellees filed a suit for injunction against the City and the Flood Control District. Included in this suit was a formal count of trespass to try title. Appellees contended that they had title to the land in controversy by virtue of the reverter clause. This suit was resolved against them. See: McCarthy v. City of Houston, 389 S.W.2d 159 (Tex.Civ.App.—Corpus Christi 1965, writ ref'd, n. r. e.).

■ Appellants contend that appellees placed the title to the property at issue by this action in trespass to try title, and that, by virtue of the adverse judgment entered in that suit, appellees have lost all their right, title and interest in the property. This contention was made in an original mandamus action filed in the 14th Court of Civil Appeals. That court correctly held that the judgment did not divest the McCarthys of their reversionary interest in the land. City of Houston v. Miller, 436 S.W.2d 368 (Tex.Civ.App.— Houston 14th Dist. 1969, writ ref'd, n. r. e.); City of Mission v. Popplewell, 156 Tex. 269, 294 S.W.2d 712 (Tex.1956).

The court submitted two special issues to the jury:

"Special Issue No. 1.

"From a preponderance of the evidence what do you find was the reasonable market value on or about January 4, 1962,

of the 24,735 square feet of land in question condemned by the City of Houston for bridge purposes?

"Answer in dollars and Cents.

"Answer $7,420.50."

"Special Issue No. 2.

"From a preponderance of the evidence what do you find was the reasonable market value of the 24,735 square feet if subject to the restriction and condition that no above ground fences, buildings or structures could be placed on such property for a period of 999 years at the time of taking on January 4, 1962?

"Answer in dollars and cents.

"Answer $1.00."

By entering its judgment based on the difference between the values found by the jury, the trial court held that the value of the possibility of reverter equaled the amount by which the restrictive covenant decreased the value of the land in question. The proper measure of damages is suggested in Comment b, § 53, American Law Institute, Restatement of Property, Vol. 1, discussing the distribution of an award where the land taken is owned in fee simple defeasible by one person with a future interest in another. The Comment states:

"If, viewed from the time of the commencement of an eminent domain proceeding, and not taking into account any changes in the use of the land sought to be condemned which may result as a consequence of such proceeding, the event upon which a possessory estate in fee simple defeasible is to end is an event the occurrence of which, within a reasonably short period of time, is not probable, then the damages for a taking thereof by an eminent domain proceeding are ascertained as though the estate were a possessory estate in fee simple absolute and the entire amount thereof is awarded to the owner of the estate in fee simple defeasible. Under

these circumstancs the future interest has no ascertainable value."

The case relied on by appellees as supporting the measure of damages submitted, State by Mondale v. Independent School District No. 31, 266 Minn. 85, 123 N.W. 2d 121 (Minn.1963), while adopting a different measure of damages, stated:

"The formula of the Restatement of Property has been quite generally accepted in the decisions of other courts which have considered the problem since 1936. In most instances, and appellate courts have concluded, as did the trial court in this case, that the event upon which the possessory estate in fee simple defeasible is to end was an event the occurrence of which within a reasonably short period of time was not probable; that the future interest, therefore, had no ascertainable value; and the owner of the fee simple determinable was entitled to the full amount of the award. The decision of the court below, therefore, is fully supported by the rule of the Restatement and the decided cases."

That the rule for apportionment of damages as set out in the Comment quoted from the Restatement of the Law of Property should be applied in this case is supported both by reason and by the applicable Texas authority.

■ At the time of the taking the property was being used by the District for drainage purposes. There was no evidence that the restrictive covenant would ever be broken. The value of the possibility of reverter was so speculative as to be nominal only.

Sabine River Authority of Texas v. Willis, 369 S.W.2d 348 (Tex.1963), was an action wherein the Authority, desiring to condemn certain land conveyed for the purpose of establishing an orphans' home by deed containing reverter clause, sought a declaratory judgment determining whether the home or the heirs would be entitled to the money awarded for the

land. While there was no discussion of the value of the reversionary interest, the court affirmed the judgment of the trial court stating:

"The judgment of the trial court adjudicates and finally determines that the condemnation and taking of the land by Sabine, and the subsequent use of the same for any purpose the condemning authority considers proper, do not constitute such diversion of use as would entitle the heirs to an interest in the property or the money awarded therefor in the condemnation proceedings."

Hamman v. City of Houston, 362 S.W. 2d 402 (Tex.Civ.App.—Ft. Worth 1962, writ ref., n. r. e.), held that one who conveyed land for park purposes by deed containing a provision for reversion was entitled to none of the award when part of the land was condemned for highway purposes. In the opinion the court quoted from First Reformed Dutch Church of Gilboa, N.Y., v. Croswell, 210 App.Div. 294, 206 N.Y.S. 132, as follows:

" 'The premises in question did in fact cease to be used for the maintenance of a church thereupon. The disuser, however, was a consequence, not a cause, of a loss of title by the plaintiff. The City of New York, in condemnation proceedings, seized the estate of the plaintiff. It also seized the rights of reverter belonging to the heirs at law of the grantors. The seizure was of the entire title, wherever resident, by a single act of appropriation. There was, therefore, no interval of time between the seizure of the plaintiff's estate and the seizure of the rights of the heirs at law during which there could have been a reverter of title to the heirs because of a church disuser of the premises necessarily consequent upon the seizure. At the moment of appropriation there had been no disuser. At that moment the estate then being enjoyed by the plaintiff might have continued forever. At that moment the rights of the heirs

were mere possibilities. These rights possessed no value capable of estimate. All that was valuable was the estate of the plaintiff. Therefore the money paid in by the city of New York should be paid to the plaintiff as for the only thing of value taken.' "

Accord: United States v. 1119.15 Acres of Land, Williamson County, 44 F.Supp. 449 (District Court E.D. Illinois.).

In its amended motion for judgment in this cause the City alleged that on the 19th day of February, 1962, it recovered a final judgment against the Harris County Flood Control District vesting in it an easement for street, road and highway purposes across the fee title to the surface estate of the property herein involved, and that thereafter it did proceed to construct a bridge thereon. On March 16, 1970, appellees, Glenn H. McCarthy and wife, filed amended objections to the award made by the Commissioners in this case. They alleged that the sum awarded is grossly insufficient in that it does not compensate them for the full and reasonable value of the property sought. They alleged that "the bridge which has been built on said property" is located within a few yards of and in clear view of their home; that there was a unity of use between their reversionary rights in the condemned property and their adjoining homestead property; and that by reason of the construction and maintenance of the bridge, the reasonable cash market value of their homestead property has been depreciated. In the prayer appellees asked for full compensation for the property taken and for the damage to the remaining homestead property. Testimony was submitted by way of Bill of Exception on the issue of the depreciation in value of the homestead by reason of the construction of the bridge.

■ In their conveyance to the Flood Control District appellees not only reserved the right to re-enter and retake title to the property in the event of the

erection of an above ground structure, but they also created a negative easement for the protection of the property retained by them. The provision that the easement could be enforced by all subsequent owners of the property retained evidenced an agreement that the protection should extend to all of the ten acre tract during the life of the easement. Such a restrictive covenant creates an interest in real estate. Miller v. Babb, 263 S.W. 253 (Tex.Com. App.1924); Settegast v. Foley Bros. Dry Goods Co., 114 Tex. 452, 270 S.W. 1014 (Tex.1925); Magnolia Petroleum Co. v. Caswell, 1 S.W.2d 597 (Tex.Com.App. 1928); Clements v. Taylor, 184 S.W.2d 485 (Tex.Civ.App.—Eastland 1944).

"An easement is extinguished by a taking by eminent domain of the servient tenement, or of an interest therein, to the extent to which the taking permits a use inconsistent with the continuance of the use authorized by the easement." American Law Institute, Restatement of the Law of Property, Vol. 5, § 507.

Comment c, § 508, supra, reads:

"c. Value—Appurtenant easement. Appurtenant easements, being usable only in connection with the use and enjoyment of a dominant tenement, have value only in connection with that tenement. Their value, then, for the purpose of measuring awards of compensation in eminent domain proceedings ordinarily is the reduction in market value of the dominant tenement with its appurtenant easements caused by the condemnation proceedings."

■ Appellees owned a property right in the nature of a negative easement appurtenant to the ten acre tract on which they maintain their residence. The City has damaged this property right by taking an easement over the land in question and constructing a bridge thereon. Appellees are entitled to compensation measured by the difference in the fair market value of the ten acre tract immediately prior to and immediately after the taking.

City of San Antonio v. Ruble, 453 S.W.2d 280 (Tex.1970); State v. Clark, 161 Tex. 10, 336 S.W.2d 612 (1960); Missouri, Kansas & Texas R. Co. of Texas v. Rockwall County Levee Improvement Dist. No. 3, 117 Tex. 34, 297 S.W. 206 (1927); Trinity River Authority v. Chain, 437 S. W.2d 887 (Tex.Civ.App.—Beaumont 1969, writ ref., n.r.e.); City of Houston v. McFadden, 420 S.W.2d 811 (Tex.Civ. App.—Houston, 14th Dist., 1967, writ ref., n.r.e.); McCarthy v. City of Houston, 389 S.W.2d 159 (Tex.Civ.App.—Corpus Christi 1965, writ ref., n.r.e.); City of River Oaks v. Moore, 272 S.W.2d 389 (Tex.Civ.App.—Ft. Worth 1954, writ ref., n.r.e.); Miller v. Snellen, 224 S.W.2d 311 (Tex.Civ.App.—Galveston 1949); Kingsville Independent School Dist. v. Crenshaw, 164 S.W.2d 49 (Tex.Civ.App.—San Antonio 1942, error ref., w.m.); Hedrick v. Graham, 245 N.C. 249, 96 S.E.2d 129 (1957); State of Texas v. Figueroa, 389 F.2d 251 (Ct. of App., 5th Cir. 1968).

■ While appellant's statement filed in the County Court restricts its taking to appellees' "reversionary rights" to the property, it appears to have been appellant's purpose to acquire all of appellees' rights in the property. The negative easement under discussion is not, strictly speaking, a "reversionary" right. Nevertheless appellees are entitled to recover in this action compensation for the property actually taken, and for the damage actually sustained. Trinity River Authority v. Chain, supra.

The judgment is reversed and the cause is remanded to the trial court.

On Motions for Rehearing

All parties have filed motions for rehearing.

Appellant contends that this Court erred in holding that appellees are entitled to compensation for the damage, if any, sustained by them by reason of the construction of a bridge over property previously conveyed by appellees, in which convey-

ance there was a covenant prohibiting the erection of above-ground structures. Appellant contends that such damage cannot be recovered in a condemnation proceeding, but can be recovered, if at all, only in a suit for damages. They call attention to City of Houston v. Wynne, 279 S.W. 916 (Tex.Civ.App.—Galveston, 1925), affirmed and writ refused in a per curiam opinion in 115 Tex. 255, 281 S.W. 544; City of River Oaks v. Moore, 272 S.W.2d 389 (Tex.Civ.App.—Ft. Worth 1954, ref., n.r.e.); Palafox v. Boyd, 400 S.W.2d 946 (Tex.Civ.App.—El Paso, 1966) and other cases cited in our opinion.

While the language used in some of the cases seems to support appellant's contention, it is believed that they can be reconciled when the distinction between a "taking" and a "damaging", is recognized.

■ The term "property", as used in Article 1, Section 17, of the Constitution of Texas, Vernon's Ann.St., includes the fee simple title to land. The term "taken" includes the appropriation of the land, or of some interest or estate in it, by actual physical possession. Property may not be taken for public use unless adequate compensation shall be first made. An injunction will lie to prevent a taking where it is attempted without such compensation. The words "damaged or destroyed" were inserted into the Constitution to include effects upon private property which are not "takings". The owner of property which is damaged, but not taken, must be compensated, but it is not required that the compensation be paid in advance, thus an injunction will not lie to prevent damage. Art. 1, Section 17, Constitution of Texas; McCammon & Lang Lumber Co. v. Trinity and B. V. Ry. Co., 104 Tex. 8, 133 S.W. 247 (1911); Ft. Worth Improvement Dist. No. 1 v. City of Ft. Worth, 106 Tex. 48, 158 S.W. 164 (1913); Duvall v. City of Dallas, 27 S.W.2d 1105 (Tex.Civ.App.—Dallas 1930).

In Ft. Worth Improvement Dist. No. 1 v. City of Ft. Worth, supra, the Supreme Court said:

"In the construction of legally authorized public works, it is inevitable that benefits will accrue to the property of some persons and injury result to that of others. If the injury that thus results from the improvement be only of such nature as is suffered from that cause in common with other property in the same community or section, the damages thus accruing are deemed merely consequential, and no right of action exists."

■ In this case the negative easement was created by deed for the benefit of appellees' adjoining property. It is alleged that this property has been diminished in value by reason of the extinguishment of the negative easement by the taking of the easement for road purposes in the property burdened and the construction of the bridge. The damage alleged is not merely consequential. We remain of the opinion that while appellees' property has not been "taken", it has been "damaged", as those terms are used in the Constitution, and that the damage suffered may be recovered in a condemnation proceeding if a suit for that purpose is instituted by the condemning authority.

The motions for rehearing are overruled.