The **CITY OF HEATH,**
Texas, Appellant,

v.

Mark **DUNCAN,** Kevin **Mitchell,** James E. **Davis,** Thomas J. **Davis,** Dianne **Villarreal,** Teresa **Duncan,** James E. and Shelby J. **Davis Revocable Living Trust,** Amy **Davis,** Benito **Villareal,** Kevin C. **Mitchell,** Robin R. **Mitchell,** Ronald D. **Carroll,** and Velvet **Carroll,** Appellees.

No. 05–03–00434–CV.

Court of Appeals of Texas, Dallas.

Sept. 23, 2004.

Rehearing Overruled Jan. 13, 2005.

Joe H. Staley, Jr., Larry M. Lesh, Dallas, for Appellant.

Jason Clarke Marshall, Winstead Schrest & Minick, P.C., Dallas, for Appellee.

Before Chief Justice THOMAS and Justices FITZGERALD and MAZZANT.[1]

### OPINION

Opinion by Chief Justice THOMAS.

This case involves a dispute over the City of Heath's plans to build a water tower in a residential subdivision. The thirteen appellees (Property Owners) own property in the subdivision. On interlocutory appeal, the City challenges the trial court's denial of its motion to dismiss the case for want of jurisdiction. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(8) (Vernon Supp.2004–05). For reasons set forth below, we affirm the trial court's order.

1. The Honorable Amos Mazzant, Justice, succeeded the Honorable Tom James, a member of the original panel, upon Justice James's

### FACTUAL BACKGROUND

Both the Property Owners and the City owned lots in a residential subdivision which was limited to residential use by deed restrictions. The City proposed the construction of a park project on its land. It entered into an agreement with the Texas Parks & Wildlife Commission (TPW) for the State to contribute funds for the park project. The agreement provided that the project property "shall not be converted to other than public recreation use."

Subsequently, the City notified TPW that it was going to remove a small area of land from the park project property to construct a water tower. The record does not show whether TPW objected to the City's change of plans, but the Property Owners allege the City did not hold any public hearing before making this change in the park plan. Once the Property Owners learned of the City's plans, they sued for injunctive relief to block the construction of the water tower and the park project on the grounds that the proposed construction violated the deed restrictions applicable to the subdivision.

In response, the City filed an answer and also counterclaimed seeking condemnation of "the real property interests, if any, that the Condemnees have in and to the certain Declaration of Restrictions." The City named the Property Owners as "condemnees." Within one month, the parties entered into an agreed temporary injunction that barred the City from any construction on the project property until a condemnation award was obtained and deposited into the registry of the court.

Shortly thereafter, the trial court appointed special commissioners, who ren-

retirement. Justice Mazzant has reviewed the briefs and the record before the Court.

dered an award totaling $331,280 to the condemnees. The City and two of the Property Owners filed written objections to the award, triggering the jurisdiction of the trial court to try the condemnation suit in the same manner as other civil suits.[2] The City then filed a motion to deposit the amount of the award into the registry of the court, and the Property Owners filed a motion to withdraw the funds. The trial court ordered the withdrawal of the money, reciting that the City "does not oppose the Motion."

After withdrawing the money, the Property Owners amended their petition to seek a declaration that the City was violating the deed restrictions, violating its own zoning ordinances, failing to comply with the requirements of the Texas Parks and Wildlife Code, and violating its contract with TPW. They sought a permanent injunction, attorney's fees, and damages stemming from the City's alleged violation of the temporary injunction. The City filed a motion to dismiss for lack of jurisdiction, attacking the standing of the Property Owners to seek any of the relief requested. The trial court denied the motion, and this appeal ensued.

In six issues, the City attacks the Property Owners' standing to seek injunctive relief, declaratory relief, and damages, and seeks to recover the money deposited into the court's registry and withdrawn by the Property Owners. With respect to standing, the City argues there is no standing because the Property Owners (1) do not own a compensable property interest in the deed restrictions, (2) have no unity of use or unity of ownership, (3) withdrew the commissioners' award, and (4) do not have a particularized interest sufficient to confer taxpayer standing and are not third-party beneficiaries under the TPW contract.[3]

## STANDING

■■■ Subject-matter jurisdiction is essential to a court's power to decide a case. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex.1993). Standing is a component of subject-matter jurisdiction, and we review standing under the same standard as that for review of subject-matter jurisdiction generally. *Id.* at 446. That standard requires the pleader to allege facts that affirmatively demonstrate the court's jurisdiction to hear the cause. *Id.* Whether a trial court has subject-matter jurisdiction is a question of law that we review de novo. *State ex rel. State Dep't of Highways & Pub. Transp. v. Gonzalez*, 82 S.W.3d 322, 327 (Tex.2002); *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex.1998); *Dallas Indep. Sch. Dist. v. Powell*, 68 S.W.3d 89, 91 (Tex. App.-Dallas 2001, no pet.). Since standing is a component of subject-matter jurisdiction, it cannot be waived by a party. *Tex. Ass'n of Bus.*, 852 S.W.2d at 445.

■■■ The general test for standing requires that there be a real controversy

---

**2.** Section 21.018 of the Texas Property Code provides:

(a) A party to a condemnation proceeding may object to the findings of the special commissioners by filing a written statement of the objections and their grounds with the court that has jurisdiction of the proceeding. The statement must be filed on or before the first Monday following the 20th day after the day the commissioners file their findings with the court.

(b) If a party files an objection to the findings of the special commissioners, the court shall cite the adverse party and try the case in the same manner as other civil causes. Tex. Prop.Code Ann. § 21.018 (Vernon 2000).

**3.** In its first issue, the City briefs the issue of this Court's jurisdiction over this interlocutory appeal. We agree that we have jurisdiction over this appeal. *See* Tex. Civ. Prac. & Rem.Code Ann. § 51.014(a)(8) (Vernon Supp. 2004–05).

between the parties that will actually be determined by the judicial declaration sought. *Id.* at 446. A plea to the jurisdiction is a dilatory plea challenging the cause of action without regard to whether it has merit. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex.2000). The plea should be decided without delving into the merits of the case. *Id.* When we consider the trial court's order on a plea to the jurisdiction, we construe the pleadings in the plaintiffs' favor and look to the pleaders' intent. *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex.2002). The allegations in the plaintiffs' petition are taken as true. *Powell*, 68 S.W.3d at 90–91. We are not required to look solely to the pleadings but may consider evidence in the record. *Bland Indep. Sch. Dist.*, 34 S.W.3d at 555.

## A. Deed Restrictions

■ In its second issue, the City argues the Property Owners have no compensable property interest that "could confer on them standing either to seek an injunction restraining the City's park project or to compel the City to respond in damages on a theory of a taking or breach of contract." In other words, the City argues there can be no "actual controversy" to be decided if the deed restrictions were not "property" in the first place as contemplated by the Texas Constitution.

Initially, we note the City itself filed the condemnation proceeding by its counterclaim and third-party petition expressly identifying the deed restrictions as the source of the property interest, "if any," that it sought to condemn. Moreover, it named the Property Owners as the condemnees. In their motion to dismiss and on appeal, however, the City relies on *City of Houston v. Wynne* and cases following it for the proposition that deed restrictions that merely forbid certain uses of land are not compensable property rights. *See*

*City of Houston v. Wynne*, 279 S.W. 916, 919 (Tex.Civ.App.-Galveston 1925), *writ ref'd per curiam*, 115 Tex. 255, 281 S.W. 544 (1926); *City of River Oaks v. Moore*, 272 S.W.2d 389 (Tex.Civ.App.-Fort Worth 1954, writ ref'd n.r.e.); and *Palafox v. Boyd*, 400 S.W.2d 946 (Tex.Civ.App.-El Paso 1966, no writ). We are not persuaded.

In *Wynne*, the court refused to enjoin the City of Houston from condemning land to build a fire station, holding that deed restrictions were contrary to public policy and void in so far as they impaired the city's power to condemn land for a public purpose. *Wynne*, 279 S.W. at 920. In the context of denying injunctive relief, the court stated:

> We have reached the conclusion that appellees were not the owners of any interest in lots 4 and 5 in block 43, upon which the city proposed to erect a fire station, as the term owner is used in article 1, § 17, of the state's Constitution.

*Id.* at 919–20.

The City relies on this language to attack standing in this case. However, this language must be read in the context of the opinion, which clearly was addressing the injunctive relief at issue in the case. The same court subsequently held that damages—rather than injunctive relief—could be recovered in a condemnation proceeding to acquire such restrictive covenants. *City of Houston v. McCarthy*, 464 S.W.2d 381, 386 (Tex.Civ.App.-Houston [1st Dist.] 1971, writ ref'd n.r.e.).

In *McCarthy*, the City of Houston sought to condemn a reversionary interest owned by adjacent property owners. The reversionary interest was retained to enforce a restrictive covenant against the construction of any above-ground structures on the land being condemned. The Court ultimately characterized the restric-

tive covenant as a negative easement that constituted a "property right" that must be compensated if damaged or taken in a condemnation proceeding. *McCarthy*, 464 S.W.2d at 386.

Although the City attempts to distinguish *McCarthy* by suggesting the court grounded its ruling on the existence of a reversionary interest, this distinction is not supported by the opinion. To the contrary, the court recognized a compensable property right in the "negative easement" created by the restrictive covenant and not the reversionary interest. *Id.*

Twenty-five years later, the same court further clarified *McCarthy*:

> In [*McCarthy* ], this Court characterized a restrictive covenant as an interest in real estate that must be compensated if damaged or extinguished in a condemnation proceeding.... [T]his Court held that the value of the appellees' reversionary interest was nominal because there was no indication that it would ever be triggered. However, we also characterized the provision that the reversion could be enforced by subsequent owners of the property as a negative easement and an interest in real estate that was appurtenant to the appellees' entire tract during the life of the easement. Thus, we held that the appellees were entitled to compensation for the damage sustained by the acquisition of their reversionary interest for highway purposes.

*Harris County Flood Control Dist. v. Glenbrook Patiohome Owners Ass'n*, 933 S.W.2d 570, 576 (Tex.App.-Houston [1st Dist.] 1996, writ denied) (op. on mot. for reh'g) (citations omitted).

We agree with the holding in *McCarthy* and likewise conclude that the restriction on the use of property in this case is a property right for which compensation may be recovered. Accordingly, we conclude the trial court did not err in denying the motion to dismiss based on this argument. The second issue is without merit. Our disposition of this issue precludes the necessity to address issue three, which addressed "joint standing" under a theory of unity of ownership and unity of use.

## B. Withdrawal of Condemnation Award

 In its fourth issue, the City argues the withdrawal of the condemnation award "relinquished" any basis for standing "other than the nonexistent compensable property interest." Both parties agree that once the award of the commissioners has been withdrawn, the City's right to violate the deed restrictions cannot be contested. There remain the questions of the value of the property that was condemned and whether injunctive relief can be supported on grounds other than the deed restrictions. The withdrawal of the award does not affect standing on these issues, and the City has not cited any authority that it does. Although the City now owns the rights created by the deed restrictions, the parties are entitled to litigate the issue of adequate compensation in the trial court. Even if that value is nominal and the Property Owners ultimately must repay some part of the award they have withdrawn, that is a matter that will have to be decided at the trial of the condemnation case below. *See State v. Jackson*, 388 S.W.2d 924, 925 (Tex.1965) (affirming trial court's order to refund portion of commissioners' award once it had been withdrawn). Thus, the deed restrictions are no longer owned by the Property Owners, but standing remains to litigate their value, if any. We overrule the City's fourth issue.

## C. Taxpayer Exception and Third–Party Beneficiaries

 In its fifth issue, the City contends the Property Owners have no stand-

ing to seek injunctive and declaratory relief as taxpayers, owners of "proximate property," or third-party beneficiaries of the TPW contract.

In their third amended petition, the Property Owners allege they are taxpayers and owners of residential lots in the subdivision where the City proposes to build the park and water tower. They ask for an injunction to prevent the City from expending public funds in the construction of the water tower on the ground that the expenditure is illegal. The alleged illegality is the failure of the City to comply "with the requirements of Texas Parks and Wildlife Code Chapter 26," the violation of its zoning ordinances, and the failure to comply with the TPW contract terms.

■ In the case of taxpayers, unless standing is conferred by statute, they must establish a particularized injury distinct from that suffered by the general public in order to challenge a government action. *Bland Indep. Sch. Dist.*, 34 S.W.3d at 555–56. A long-established exception is that a taxpayer may sue in equity to enjoin the illegal expenditure of public funds, even without showing a distinct injury. *Id* at 556. Implicit in this exception are two requirements: (1) the plaintiff is a taxpayer; and (2) public funds are expended on the allegedly illegal activity. *Williams v. Lara*, 52 S.W.3d 171, 179 (Tex.2001).

The Texas Parks and Wildlife Code requires notice and a public hearing by a municipality before any land dedicated and used as a park can be converted to another type of use. *See* TEX. PARKS & WILD.CODE ANN. § 26.001 (Vernon 2002). The Property Owners allege the site of the water tower was removed from the land previously dedicated for a municipal park and the City did not give public notice or hold any hearings about the change as required by section 26.001 of the parks and wildlife code.

In *Bland Independent School District,* the supreme court considered a similar taxpayer claim of illegality. A school district entered into a contract to build a school without giving public notice required by state law. The supreme court concluded that the taxpayer exception to the standing requirement did not apply because the construction had already been completed. However, the failure to give public notice required by statute was not questioned as a basis for the claim of illegal expenditure of public funds. *See Bland Indep. Sch. Dist.,* 34 S.W.3d at 556.

Construing the Property Owners' pleadings in their favor and taking the allegations in the petition as true, their claim that the City has changed the use of park property without a public hearing required by state law is sufficient to confer standing to seek declaratory and equitable relief under the taxpayer exception without a showing of particularized injury. *Id.*[4] Having concluded that the Property Owners have standing to seek such relief under the taxpayer exception, we need not address whether they also have standing as "proximate property owners" or third-party beneficiaries. We overrule the fifth issue.

Finally, the City's sixth issue is a request that we instruct the trial judge to order the return of the funds withdrawn by the Property Owners and to dismiss the suit for want of jurisdiction. Our rulings on the standing issues make it unnecessary for us to address this issue.

---

4. In its brief, the City asserts any claim that chapter 26 was violated had to be filed within "thirty days" or was untimely as a matter of law. The City, however, does not argue that the claim in this case was filed later than thirty days, nor did the City make that argument in its motion to dismiss for lack of jurisdiction.

154

We affirm the trial court's order denying the motion to dismiss for want of jurisdiction.