J. J. SETTEGAST ET AL. v. FOLEY BROTHERS DRY GOODS COMPANY.

No. 4307.    Decided April 8, 1925.

(270 S. W., 1014.)

Lease—Easement—Merger—Case Stated.

A lease of lots A for ninety-nine years permitted the lessee to remodel or rebuild the structures on the leased property.    Lessor owned also lots B adjoining lots A and having a three story building coming to the boundary A narrow strip, wholly on lots A, separated the buildings thereon from that on lots B.    The lease provided that there be left open this space of four feet wide on lots A "as an alley way for light and air" to be used by occupants of lot B above the first floor only for such purpose, and on the ground "not for storage or passage way except in case of such emergency as fire or other calamity."    The lessor was also required, on the expiration, in a year and a half, of an existing lease on the premises B, to close all exits, entrances, windows and other openings on the ground floor of his said building" making it a solid wall.    Thereafter the lessor made a ninety-nine year lease of the premises B, which the lessee of lots A subsequently acquired, becoming tenant in possession of both premises.    *Held*:

(1) That the lessor then retained no easement in such alley as would entitle him to injunction against the lessee so remodeling the leased building as to extend it over such four foot alley and unite its floor space with that of his building on lots B.    (Pp. 454, 455).

(2) The easement for light and air was lost by merger when both premises came into the possession of the same lessee.    (P. 455).

(3) The right of the lessor as owner of the adjoining premises (lots B) to use the alley for entrance or exit in case of fire did not constitute an easement, but a mere license, personal to him as possessor of such premises and terminating when he ceased to be such.    (Pp. 455, 456).

(4) If such right was not so lost, still it became unavailable when such entrance or exit by the alley was made impossible by the closing of all openings in the building (lots B) by a solid wall, as provided in the lease.    (P. 456).

Question certified from the Court of Civil Appeals for the First District, in an appeal from Harris County.

The Supreme Court having referred the question to the Commission of Appeals, Section, A, for its opinion thereon here adopts and certifies same as its answer.

*Henry J. Dannenbaum*, for appellants.

*Maurice Epstein*, and *Taliaferro & Epstein*, for appellees.

MR. PRESIDING JUDGE GERMAN delivered the opinion of the Commission of Appeals, Section A.

This case is before the Supreme Court on certificate from the Court of Civil Appeals at Galveston.    We summarize the facts:

On December 28, 1920, J. J. Settegast and wife were owners of Lots 11 and 12 in Block 45 in the City of Houston. On that date they executed to Foley Bros. Dry Goods Company, a corporation, a lease for a continuous period of ninety-nine years, from and after July 1, 1922, with privilege on the part of the lessee to terminate same after ten years. At the time of the execution of this lease there was a building and other improvements on these lots, and the lease covered the improvements as well as the entire two lots. At the time the lease was given Settegast and wife owned parts of Lots 4 and 5 in Block 45, upon which there was a building known as the Settegast building. The Settegast building was immediately east of the building on Lot 11. It extended up to the west line of lots 4 and 5, but the building on lot 11 was set back six feet from the east line of this lot, leaving an alley way of about six feet between the two buildings. The Settegast building was then under lease to certain parties, which lease would expire by its terms June 30, 1922. Paragraph 14 of the Foley lease contains the grounds of disagreement between the parties. It is as follows:

"It is understood that the lessors herein own the rear portion of lot 5 and the adjoining twelve feet of lot 4 in block 45, with the building thereon, fronting on Preston Avenue, which property is east of and adjoining lot 11 hereby leased. It is agreed that if the lessee shall either remodel the present building or construct a new building on the north portion of lot 11 in block 45, which lot is west of and adjoining the rear of lots 5 and 4, that there shall be left open an alley or space four feet in width off of the east side of said lot 11, beginning on Preston Avenue, and extending back sixty two feet along the rear lines of lot 5 and part of lot 4, which said four feet wide by sixty-two feet deep shall be left open as an alley way for light and air from the ground all the way up to and above the top of the building; and it is understood and agreed that the lessors herein and the tenants and occupants of their building on said parts of lots 5 and 4 shall not have any use of said space or alley way for storage or passage way, except in cases of such emergency as fire or other calamity they may use the space on the surface of the ground temporarily for entrance and exit purposes, but shall not use the space above the first story except for light and air, and shall in no event obstruct said space; and it is further agreed that at the expiration of the present lease from the lessors herein on their said building on said parts of lots 5 and 4, on the 30th day of June, 1922, all exits, entrances, windows, and other openings on the ground floor of said building on said parts of lots 5 and 4, now leading from or into said alley way, shall be closed and the same shall be made a solid wall."

On December 15, 1922, Settegast and wife executed a lease to M. H. Hurlock on lots 5 and 4, upon which was the Settegast building, which lease was for a continuous period of ninety-nine years from and after January 1, 1923, and which provides that the lessee, his heirs or assigns, may have the right and option of buying the property at any time. On August 24, 1924, this lease was assigned to the Foley Bros. Dry Goods Company, the holder of the lease on lots 11 and 12.

This action was brought by Settegast and wife against Foley Bros. Dry Goods Company to obtain an injunction. Among other things it is alleged that the defendant, Foley Bros. Dry Goods Company, having become the holder of both leases, is about to remove the walls of the building on the east side of lot 11 and of the first three floors of the building on the west side of lots 5 and 4, and to unite said two buildings, thereby closing the alley way hereinabove referred to from the ground to the height of three stories, and thereby create for its use one entire undivided floor space on each of said three floors. The injunction was sought to restrain the closing of said alley way. The following allegation in plaintiffs' bill reveals the basis of their claimed right to relief:

"That it was the intent, purpose and effect of said provisions (referring to provisions of Paragraph 14) to secure to the lessors in both of said leases not only an easement of light and air to the floors of said brick building on part of lots 4 and 5 above the ground floor thereof, but also a passage way and means of quick access for firemen and other public authorities to the rear and sides of plaintiffs' buildings on lots 11, 12 and parts of lots 4 and 5, in the event of fire breaking out in said buildings or in any building in said block from which a fire might spread to plaintiffs' said buildings or either of them. That said alley opens into and connects with an open space eight feet wide in the rear of plaintiffs' buildings on lots 11 and 12; that the continued existence of said passage way is of great value to plaintiffs in that it diminishes the risk of the destruction or damage of plaintiffs' buildings on both leases by fire originating therein or in other buildings in said block."

Hearing was upon the sworn pleadings of the parties, and the district court denied a temporary injunction. The question propounded by the Court of Civil Appeals is:

"Did the trial court err in refusing to grant the temporary injunction?"

We do not find it necessary to determine whether or not appellants (plaintiffs in the trial court) have such interest in the buildings, under the terms and conditions of the leases, as authorizes them to maintain an action for injunction. We think it apparent that when the language of Paragraph 14 is interpreted in the light of the

ordinary meaning and signification of the words used, and certain general principles applicable, there is no legal right reserved by or guaranteed to the appellants which they are entitled to preserve by writ of injunction.

An analysis of said paragraph shows that it may be said to have three different provisions:

1. As admitted by all parties, it creates an easement for light and air in behalf of the building on lots 5 and 4, and which is imposed upon a strip of land four feet wide along the east side of lot 11 to the depth of sixty-two feet. However, it is admitted by appellants that this easement has been lost or suspended on account of the merger of possession of the two tenements in Foley Bros. Dry Goods Company, and they are asserting no right by reason of that provision.

2. There is an affirmative prohibition as to right of the lessors (Settegast and wife) and the tenants and occupants of the Settegast building to use the four foot alley for storage or passage way, and they are denied the right to obstruct it.

3. There is a modification of this prohibition in one particular, such modification being that in "cases of such emergency as fire or other calamity they may use the space on the surface of the ground temporarily for entrance and exit purposes."

An easement is a liberty, privilege or advantage without profit which the owner of one tract of land may have in the lands of another. Though incorporal, it is an interest in land, and must be created by grant, covenant or agreement, express or implied.

A license is a privilege or authority given to one or retained by one to do some act or acts on the land of another, but which does not amount to an interest in the land itself.

Covenants or restrictive clauses in instruments concerning real estate must be construed strictly, favoring the grantee and against the grantor, and all doubts should be resolved in favor of the free and restricted use of the premises.

A reservation contained in an instrument of conveyance or lease which favors the grantor or lessor and tends to limit the free use of the premises by the grantee or lessee will not be enlarged by construction, but will be given effect according to the plain meaning and intent of the language used.

No question is raised here as to the right of a landlord, under a lease for a ninety-nine year period, to make such restrictions and conditions as he may see proper with reference to buildings to be erected thereon, and to contract with regard to easements for all lawful purposes. As indicated above, the sole contention of appellants is this: That the clause in the contract "in cases of such emergency as fire or other calamity they may use the space on the surface of

the ground temporarily for entrance and exit purposes'' creates an easement in their favor, appurtenant to both of the tracts of land, which entitles them to the right to keep open a space four feet wide between the buildings to enable firemen and the public authorities to go between the buildings, in case of fire and other calamity, to extinguish fires and otherwise protect the buildings.

In the light of the definitions and propositions above set out, we think it perfectly clear that the reservation in the lease giving the right to Settegast and the tenants and occupants of the Settegast building, in the case of fire or other calamity, to use the alley way temporarily for entrance and exit purposes, created no easement; but at the most was only a permissive right, in the nature of a license, personal to those in whose favor such right was reserved. There is no intimation that the alley way must be kept open for this purpose, and if this had been the intention of the parties it could have been easily expressed, as was done with reference to the easement for light and air. Nor is there anything in the language, interpreted in the light of all the circumstances, to indicate that city firemen or public authorities or any one except the lessors, tenants and occupants of the Settegast building, were to exercise this privilege.

This being purely a personal privilege reserved by Settegast and wife in connection with their possession of the property on lots 4 and 5. when they parted with the possession under the lease contract for ninety-nine years, we think the right was lost.

However, if this should be a wrong conclusion, they are indisputably without right to the injunction. The right to use the alley way for entrance and exit purposes was plainly intended solely for entrance and exit into and from the *building* from and to the *alley*, and same has no reference whatever to entrance and exit into and from the alley from and to the street or streets. This being true, when, under the terms of the contract, all exits, entrances and other openings on the ground floor of the building leading into said alley way were closed on June 30, 1922, the plaintiffs made it impossible for them to longer exercise the privilege reserved to themselves, and such right or privilege now no longer exists.

We therefore answer the question propounded by the Court of Civil Appeals by saying that the trial court did not err in refusing to grant the temporary injunction.

The opinion of the Commission of Appeals answering certified questions is adopted and ordered certified to the Court of Civil Appeals.

<div align="right">

*C. M. Cureton*, Chief Justice