**COLLIER et al. v. CARAWAY et al.**

No. 3596.

Court of Civil Appeals of Texas. Beaumont.

May 29, 1940.

Fortenberry & Fortenberry and E. E. Easterling, all of Beaumont, James F. Parker, of Kountze, and W. O. Bowers, Jr., and Orgain, Carroll & Bell, all of Beaumont, for appellants.

J. L. Goggans, of Dallas, and J. R. McDougald and J. R. Beck, both of Beaumont, for appellees.

COMBS, Justice.

This is a suit in trespass to try title, involving the ownership of the oil, gas, and other minerals in 53 acres of the Joseph Ellery League of land in Hardin County. Appellee T. J. Caraway and his wife, now deceased, were common source of title. Appellants T. J. Caraway et al. claim to the oil and gas estate originated as follows:

By general warranty deed, dated March 19, 1907, T. J. Caraway and wife conveyed the 53 acres of land in question to their daughter Mrs. M. J. Calloway as a gift. That deed, after the description of the land and immediately before the habendum clause, contained · the following clause: "The privilege to drill an oil well is hereby reserved unto the grantors, upon the hereinaboye described tract of land." That clause is the only reference in the deed to the mineral reservation. The deed was recorded on the date of its execution. By deed dated April 17, 1922, Mrs. Calloway, then Mrs. Jackson (she having married W. A. Jackson in the meantime), joined by her husband conveyed the land to John Haynes, who, joined by his wife, conveyed it to J. N. Collier by deed dated August 31, 1925. Said two deeds carried the clause reserv-

ing the right to drill an oil well in haec verba as set forth in the deed from T. J. Caraway to Mrs. Calloway and above quoted. By deed dated November ——, 1929, J. N. Collier and wife conveyed the land to S. C. Harris, reserving in said deed one-half of the mineral rights. No reference was made to the reservation in the former deeds of the right to drill an oil well on said land. April 19, 1931, S. C. Harris conveyed the land to Emma P. Theus, subject only to the reservation of one-half the minerals by the Colliers. March 6, 1934, Mrs. Theus and husband executed an oil and gas lease to J. W. Parr, who assigned it to Humble Oil and Refining Company April 17, 1934. There were several subsequent conveyances of mineral interests, leases, royalties, etc., none of which made any reference to the Caraway-Calloway reservation of the "right to drill an oil well." Neither the Caraways nor anyone holding under them have ever entered on the land and drilled for oil and, so far as the records show, the Caraways never executed any lease or conveyance of the mineral rights or claim, whatever it was, reserved by the Caraways in the deed to Mrs. Calloway in 1907, until January 28, 1938, when T. J. Caraway and the heirs of his deceased wife executed an oil and gas lease to appellant David E. Coffman. It was stipulated: "That prior to the early summer of the year 1936 there had not been any actual drilling for oil in that immediate vicinity of the land in question; the nearest oil field to the land in controversy prior to the early summer of the year 1936 being about nine miles distance, which oil field came in about 1928." This suit was filed August 29, 1938.

As above stated, the Caraways' suit is in the form of trespass to try title and they assert ownership of the entire oil and gas estate by virtue of the reservation above set forth, subject to the lease which they made to Coffman. The first count of their pleading was in ordinary form of trespass to try title. The second count was to the effect that the reservation clause was ambiguous, and therefore the court should permit parol evidence to show the intention of the parties, which intention was to reserve all the oil, gas, and other minerals. The third count alleged in the alternative that if the language of the reservation was insufficient to reserve to them the oil, gas, and other minerals, that same was the result of a mutual mistake of which the defendants had notice, and they sought reformation of the instrument to make it speak the true intention of the parties so as to reserve the oil, gas, and other minerals. The appellees in addition to their plea of not guilty, specifically plead title in themselves by virtue of the 3, 5, 10 and 25 year statute of limitation. They further plead the 2, 4, and 10 year statute of limitation in bar of appellants' suit, and further plead specifically laches, and the statute of frauds. Two oil companies were originally parties to the suit by virtue of leases. But the controversy as to them seems to have been settled. So, the controversy before us is simply between the Caraways and others claiming title by virtue of the reservation and Mrs. Collier and others claiming under deed from the Caraways to Mrs. Calloway.

The facts as above briefly stated appeared without dispute. The trial court instructed a verdict and entered judgment to the effect that the appellees, Caraway et al., take nothing "except as to the right to enter in and upon said above described tract of land and drill one oil well thereon and to receive, sell and dispose of any oil produced from said well together with the right to egress and ingress upon the above described land for the purpose of drilling said well and producing and removing therefrom the oil to be so produced and removed therefrom if any." Both sides have perfected appeals from that judgment.

## Opinion.

For convenience we will refer to the parties claiming under the reservation as the Caraways, and the parties claiming under the deed to Mrs. Calloway as the Colliers.

The first contention of the Caraways is to the effect that the clause in the deed to Mrs. Calloway reading, "The privilege to drill an oil well is hereby reserved unto the grantors, upon the hereinabove described tract of land", reserved to the grantors the same character of ownership of the oil and gas estate with the incidental rights of exploration, production, and marketing, as vests in the lessee by an ordinary oil and gas lease, except that it did not provide any limitation or condition which would defeat the fee title so reserved. Thus, as we construe their contention, it is that the Caraways by virtue of the reservation, retained the oil and gas estate in fee to be enjoyed at will and in perpetuity. As against that

contention the Colliers contend that the clause in question is too vague and uncertain to reserve anything, and, second, that in any case, what was reserved was not in the nature of fee ownership of the oil and gas but only the personal right to enter upon the land in question and drill one well. They contend further that since the alleged reservation created a mere equitable right it was such right as could be lost, and under the facts has long since been lost, under the doctrine of laches and stale demand.

■ In the outset, and without any extended discussion, we overrule the contention that the clause in question was of no force and effect because too vague and indefinite to reserve anything to the grantors. By its plain terms it reserved to the grantors "the privilege to drill an oil well" on the land which was conveyed. True it said nothing about incidental rights of use of the surface. But several oil fields notably Spindletop in Jefferson County, and Sour Lake, Saratoga, and. Batson in Hardin County, all within a radius of some thirty miles of the land in question, had been developed by the drilling of wells and the production of oil for several years. The necessary incidental rights to the drilling of an oil well and the producing and marketing of oil therefrom were then established in this region and were doubtless understood by the grantors and the grantee. Therefore such incidental rights were embodied by necessary implication in the reservation.

■■ We overrule the contention of the Caraway's that the reservation had the effect of reserving to them the oil, gas and mineral estate under the land. There were no apt words specifically reserving the mineral estate or the oil and gas. In fact there was no mention of or direct reference to the mineral estate or oil and gas as such. What was reserved by apt words was simply "the *right* to drill an oil well." That and nothing more. Hence the reservation clause contained no apt words either specifically reserving the oil and gas or from which it can be inferred that the oil and gas estate was the subject of the reservation. Ownership of the oil estate was not essential to the exercise of the right reserved to drill an oil well. Certainly one may by appropriate contract acquire or reserve the right to drill an oil well upon the land of another and to take therefrom and to market for his own any oil which he may discover and produce without being invested with a present title, determinable fee or otherwise, to the oil estate. In this connection we will observe that while our Supreme Court has repeatedly held that the usual form of oil and gas lease in use in Texas creates a present determinable fee title to the oil and gas in place, it should be borne in mind that such holdings were based upon a construction of the effect of the instrument under consideration. It has never been held by our courts, nor will it likely be, that the owner of land cannot by appropriate contract confer upon another the *privilege* or *right* of drilling upon the land and taking oil therefrom without investing him with ownership of the oil and gas in place. So it is our conclusion that the reservation clause here under consideration merely reserved to the Caraways an equitable right or privilege, and not a present title.

■ It is a familiar rule of the construction of deeds that they are to be most strongly construed against the grantor and· in favor of the grantee. This rule applies. to reservations. Settegast v. Foley Bros., 114 Tex. 452, 270 S.W. 1014; Arden v. Boone, Tex.Civ.App., 187 S.W. 995. It cannot be questioned of course that the Caraways had the right to reserve to themselves the oil or any right or ownership. therein which they chose to reserve. The question here is simply one of determining what they did in fact reserve. And this must be determined from a construction of the reservation clause. The reservation so expressed may not be enlarged to include a greater estate, interest or right, than a fair construction of its language requires. Settegast v. Foley Bros. supra, 18 C.J. 344. It seems clear to us that to construe the words "the privilege to drill an oil well" as reserving the oil and gas would be to greatly enlarge the reservation beyond what its language requires. It would be to read into it the right to drill many wells when only one was specified. It would be to read into it the right to appropriate completely the surface estate by the drilling of wells and the producing of oil to the exclusion of the grantee for an indefinite period. It would be to deny the grantee any right to drill oil wells on the land, notwithstanding the reservation did not by apt words or reasonable inference specify that the right reserved to the grantors was to be exclusive. At most it is susceptible only to the construction that the grantors had

914

the prior right to drill an oil well at any place of their selection on the land. We therefore hold that the reservation reserved to the grantors the right to drill an oil well at some point of their selection; that such reservation carried with it by necessary implication the right to ownership of the oil which they might succeed in producing therefrom and such rights and easements as are reasonably necessary and incidental to the drilling for and the production and sale of the oil if any, discovered and taken from the land as the result of the drilling of the well.

At this point we reach what we think is the most difficult question in the case, which is, have the Caraways and those claiming under them lost their right to go upon the land, drill the well and take and market the oil therefrom by reason of their long delay in asserting the right. The reservation was made in 1907. The facts show that for more than thirty years, the Caraways drilled no oil well, executed no lease, or otherwise attempted to exercise the right which they had reserved.

Had the reservation reserved to the Caraways a present ownership of the oil and gas or an interest therein, then their title could only be destroyed by adverse possession and limitation and the doctrine of laches and stale demand could have no application. Bremer v. Case and Deffenbaugh, 60 Tex. 151; Harvey v. Cummings, 68 Tex. 599, 5 S.W. 513; House v. Brent, 69 Tex. 27, 7 S.W. 65; Betzer v. Goff, 35 Tex.Civ.App. 406, 80 S.W. 671. But as we have said above, our construction of the reservation is that it reserved no present estate or title to the oil or other minerals but only an equitable right. Dull v. Blum, 68 Tex. 299, 4 S.W. 489; Turner v. Hunt, 131 Tex. 492, 116 S.W.2d 688, 117 A.L.R. 1066. In Dull v. Blum, supra, our Supreme Court had before it for construction a deed which purported to convey to the grantee title to a tract of 320 acres of land to be taken in a defined shape out of any one of the four corners of a larger tract. It was held that the deed conveyed no title but created only an equitable right in the grantee to select a tract and have it conveyed to him. In discussing the point Judge Gaines said [68 Tex. 299, 4 S.W. 490]: "It is true it [the deed] has the conveying words of a deed, and purports to be a present conveyance, and not a mere promise to convey. But the terms of the instrument show that the title was not to

pass as the immediate effect of the contract. Fairchild [grantee] took title to no part of the land before selection. He only acquired a right to choose and designate a tract of 320 acres, to be taken in a defined shape out of any of the four corners of a larger tract. *Until the designation was made, he clearly had no title to any specific tract; nor did he have title to any undivided interest in the whole.*" (Italics ours.) We think this principle has application to the Caraway reservation.

■■ It should be borne in mind that although a different rule prevails in some states, in Texas it is definitely established by our Supreme Court that oil and gas are as susceptible to ownership in place as is the surface. Hence had the Caraways exercised their right to drill an oil well and had discovered oil in paying quantities, they would thereby have definitely located the oil which their contract gave them the right to prospect for, locate and produce, thus freeing the balance of the tract for operations by their vendee and those claiming under her. But as in Dull v. Blum, supra, until they did that, and thereby exercised their right of selection they held no present title to the oil and gas, nor to any undivided interest therein. It seems to us that this conclusion follows logically and inescapably from the principle that oil and gas are susceptible to distinct and segregated ownership in place.

■ Since the Caraways reserved to themselves not a title but only an equitable right to enter upon the land and drill an oil well we think it was such right as could be barred by unreasonable delay in exercising it. We think it is a settled principle that the doctrine of laches may be given application where during the claimant's delay in asserting his claim, there has been a change of condition which cannot be disturbed without producing injustice. Galveston, H. & S. A. Ry. Co. v. DeGroff, 102 Tex. 433, 443, 118 S.W. 134, 21 L.R.A., N.S., 749. The cases seem to proceed on the theory that laches is not, like limitation, a mere matter of the lapse of time, but is rather a question of inequity in permitting the claim to be enforced. Conrads v. Kasch, Tex.Civ.App., 26 S.W.2d 732, 737, writ refused. See Kash v. Conrads, 119 Tex. 449, 31 S.W.2d 630; O'Brien v. Wheelock, 184 U.S. 450, 22 S.Ct. 354, 46 L.Ed. 636. In the case before us we have not merely a long delay, more than thirty years in exercising the right reserved,

but also a vastly changed condition. Land which was not known to be oil producing in 1907, and which had but comparatively small value at that time, had increased in value tremendously due to the discovery of oil in the immediate vicinity of it. The right to drill an oil well which was of such doubtful and uncertain value in 1907 and for many years thereafter as perhaps not to warrant its exercise became very valuable. A number of persons had acquired mineral interests and leases in the property involved. These valuable rights would now be destroyed or greatly injured should the Caraways be permitted to exercise the right which they reserved in 1907 to drill an oil well. Thus the long delay and the change of conditions invoke the doctrine of laches and stale demand. Dull v. Blum, 68 Tex. 299, 4 S.W. 489; Penn. Mutual Life Insurance Co. v. Austin, 168 U.S. 685, 18 S.Ct. 223, 42 L.Ed. 626; 19 Am.Jur. 339 et seq.; Wagg v. Herbert, 215 U.S. 546, 30 S.Ct. 218, 54 L.Ed. 321; Hays v. Seattle, 251 U.S. 233, 40 S.Ct. 125, 64 L. Ed. 243. The counsel for the Caraways insist that there was no occasion for the Caraways to exercise their right to drill prior to the summer of 1936 when oil was discovered in the immediate vicinity of the land. A party holding such an equitable right cannot delay its exercise until time shall demonstrate whether or not his right is of sufficient value to warrant its exercise. Hammond v. Wallace, 85 Cal. 522, 24 P. 837, 20 Am.St.Rep. 239. On the contrary the very fact that the property has increased in value during his delay thus rendering his contract more valuable is an important factor in invoking the doctrine of laches. Hayward v. Eliot Nat. Bank, 96 U.S. 611, 24 L.Ed. 855; Wetzel v. Minnesota Ry. Transfer Company, 169 U.S. 237, 18 S.Ct. 307, 42 L.Ed. 730; Starkweather v. Jenner, 216 U.S. 524, 30 S.Ct. 382, 54 L.Ed. 602, 17 Ann.Cas. 1167; Campbell v. Bartlett, 122 Tenn. 208, 122 S.W. 250, 25 L.R.A.,N.S., 639. As we see it the Caraways here assert an equitable right which, should the court enforce it, will produce an inequitable result. This situation was not brought about by any wrong of those against whom the right is asserted. Instead it is due solely to the laches of those who would now enforce it after more than thirty years of silence and inaction.

Accordingly the judgment of the trial court in so far as it awarded to the Caraways the right to drill an oil well is reversed and here rendered in favor of the Colliers et al., and in so far as the judgment denied to the Caraways the ownership of the oil and gas it is affirmed.

In part affirmed, in part reversed and rendered.

We have withdrawn the original opinion and rewritten it in order to correct certain factual matters and to clarify certain holdings. But we have not changed any holding, and of course it will not be necessary for the parties to file any motion for rehearing against this opinion.