02-10-042-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-10-00042-CR

 

 


 
 
 Ken Jannereth
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

 

FROM County
Criminal Court No. 5 OF Denton COUNTY

----------

 

MEMORANDUM
OPINION[1]

----------

 

Introduction

 

          Appellant
Ken Jannereth appeals his conviction for criminal mischief,[2]
claiming in three points that the evidence is insufficient and that the State’s
witness list was inaccurate.  We affirm.

Factual
and Procedural Background

          Appellant
resides in the Bar VK Air Ranch Estates (Bar VK) and is a member of its
homeowners’ association (HOA).  The HOA holds a warranty deed for Bar VK’s
common areas, which include a private lake and a road providing access to the
lake (the lake road).

          The
HOA holds annual meetings in October.  Members who attended[3] the October 2008 meeting voted
unanimously to erect a barrier on the lake road in response to residents’
complaints about use of the lake by non-residents.  The barrier consisted of
twin PVC pipes inserted vertically into and locked onto metal sleeves buried
into the ground.  The barrier was designed to curtail access by large vehicles yet
still allow small vehicles such as golf carts and ATVs to pass through.  Each
executive committee (EC) member of the HOA was given a key with which to unlock
the padlocks and remove the pipes whenever a resident wished to drive a larger
vehicle to the lake.

          On
January 31, 2009, Appellant told HOA president Vaughn Gary Petty (Petty), that
if the barrier was installed, Appellant would tear it down.  On February 6,
2009, Appellant made similar statements to EC members while they constructed the
barrier.  Two days later, on February 8, 2009, EC members found the barrier pipes
removed from the metal sleeves and strewn alongside the road.  They restored the
barrier, and on February 11, 2009, found it removed once more and broken as
well.

          Appellant
admitted to Petty and to law enforcement personnel that he had cut the locks
and dismantled the barrier pipes on both occasions, but he denied that he had done
any other damage to the barrier.

          Appellant
was charged with criminal mischief, tried by a jury, and convicted.  The trial
court, assessing punishment for the Class B misdemeanor offense,[4]
ordered him to pay a fine and serve 180 days in the county jail, probated for
two years.

Sufficiency
of the Evidence

          In
his first two points, Appellant challenges the legal and factual sufficiency of
the evidence to support his conviction.  The court of criminal appeals has held
that there is no meaningful distinction between the standards of review for
determining whether evidence at trial is legally sufficient as opposed to factually
sufficient.  Brooks v. State, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010)
(overruling Clewis v. State, 922 S.W.2d 126 (Tex. Crim. App. 1996)).  Accordingly,
the standard set out in Jackson v. Virginia, 443 U.S. 307, 99 S. Ct.
2781 (1979), is the “only standard that a reviewing court should apply in
determining whether evidence is sufficient to support each element of  a
criminal offense that the State is required to prove beyond a reasonable
doubt.”  Id. at 895; see Jackson, 443 U.S. at 319, 99 S. Ct. at
2789.  Applying the Jackson standard to Appellant’s first two points, we
must consider the evidence in the light most favorable to the prosecution to
determine whether any rational trier of fact could have found the essential elements
of the offense beyond a reasonable doubt.  See Jackson, 443 U.S. at 319,
99 S. Ct. at 2789; Clayton v. State, 235 S.W.3d 772, 778 (Tex. Crim.
App. 2007).

          The
jury found Appellant guilty of criminal mischief that caused damage of fifty
dollars or more but less than $500.  A person commits this offense if he
intentionally or knowingly damages or destroys tangible property without the
owner of that property’s effective consent and in so doing causes a pecuniary
loss of fifty dollars or more but less than $500.  See Tex. Penal Code
Ann. § 28.03(a)(1), (b)(2).

          Appellant
contends that the evidence is insufficient because (1) the State did not prove
that he was not an owner of the damaged property, (2) he had a right to take
down the barrier in order to enforce a restrictive covenant, (3) no witness had
“actual knowledge” that he caused the damage, and (4) the pecuniary loss from
the damage was less than that alleged by the State.

The
evidence is sufficient to show that Petty was the owner.

          In
subpoint IA, Appellant argues that the State failed to meet its burden to prove
that he was not an owner of the property the jury found him guilty of
damaging.  As the State correctly points out, however, the State was not
required to prove a negative.  Contrary to Appellant’s claim, in order to
sustain a guilty verdict the State had to prove ownership by the complainant,
not non-ownership by Appellant.  An owner is a person who has title to the
property, possession of the property, whether lawful or not, or a greater right
to possession of the property than the person charged with damaging or
destroying the property.  See Tex. Penal Code Ann. § 1.07(a)(35)(A)
(West 2011).  Ownership may be proven by oral testimony.  Smith v. State,
638 S.W.2d 476, 478 (Tex. Crim. App. 1982); Milo v. State, 748 S.W.2d
614, 616 (Tex. App.––San Antonio 1988, no pet.).

          Article
21.08 of the code of criminal procedure provides in part:

Where one person owns
the property, and another person has the possession of the same, the ownership
thereof may be alleged to be in either.  Where property is owned in common, or
jointly, by two or more persons, the ownership may be alleged to be in all or
either of them . . . .

 

Tex.
Code Crim. Proc. Ann. art. 21.08 (West 2009).  The court of criminal appeals
has frequently said that this statute applies to property owned by a corporation. 
Eaton v. State, 533 S.W.2d 33, 34 (Tex. Crim. App. 1976).  The court has
also said that when the property referred to in an indictment belongs to a
corporation, it is not only permissible but also the better pleading practice
to allege ownership in a natural person acting for the corporation.  Id.
(citing Castillo v. State, 469 S.W.2d 572, 573 (Tex. Crim. App. 1971); Walling
v. State, 437 S.W.2d 563, 564 (Tex. Crim. App. 1969)).

          Here,
the indictment alleged Petty as the owner of the subject property.  The record
shows that the HOA is a non-profit corporation holding a warranty deed to the
common areas of the Bar VK.  Petty testified that he was president of the HOA
during October 2008.  Because the State alleged Petty as the owner and the
evidence showed that he was the president of the HOA, that the HOA was a
non-profit corporation, and that Petty acted on its behalf during the relevant
time period, we hold the evidence is sufficient to show ownership as alleged
and we overrule subpoint IA.

          In
subpoint IB, Appellant argues that “the jury erred when it did not consider
Appellant’s property interest as a defense.”  In other words, he, as one with
an ownership interest, gave effective consent to himself to damage the pipes.  We
have already held that the evidence is sufficient to establish that Petty,
acting on behalf of the HOA, was the owner of the subject property.  The most
that the evidence shows by virtue of Appellant’s membership in the HOA is that he
enjoyed a privilege to use the HOA’s common areas.  But a privilege to use is
akin to a license; it is not ownership.  See Settegast v. Foley Bros. Dry
Goods Co., 114 Tex. 452, 455, 270 S.W. 1014, 1016 (1925) (defining license
as a privilege or authority given to one or retained by one to do some act or
acts on land belonging to another, but which does not amount to an interest in
the land itself); Samuelson v. Alvarado, 847 S.W.2d 319, 323 (Tex.
App.––El Paso, no writ) (1993) (same).  Moreover, even if we were to accept
Appellant’s claim that he had some ownership interest in the property, which we
do not, Appellant concedes that the penal code provides that “[i]t is no
defense to prosecution [that he] has an interest in the property damaged or
destroyed if another person also has an interest that the actor is not entitled
to infringe.”  See Tex. Penal Code Ann. § 28.05 (West 2011).  As stated
above, the evidence is sufficient to establish that Petty acted for the HOA as
the owner.  Furthermore, Petty specifically testified that no one had his
consent to damage the pipe, cut the locks, or bend the pipes down.  There is no
evidence in the record showing that Appellant was entitled to infringe upon the
HOA’s ownership interest in the property despite his claim that he was
justified in damaging the HOA’s property in order to enforce its covenants.

          Without
citing any authority for his position, Appellant argues that he “had ‘effective
consent’ to cut the locks effective[ly] blocking the roadway pursuant to the
deed restrictions and the covenants running with the land.”  He makes several
references in his brief to the original deed restrictions admitted as State’s
Exhibit 2.  A careful reading of that exhibit, however, reveals that the deed
restrictions do not authorize the self-help remedy Appellant employed and
therefore do not provide, as he claims, any defense to his criminal conduct. 
On the other hand, the deed restrictions do provide the following remedy, one
that drastically differs from the one chosen by Appellant:

If any person or
persons shall violate or attempt to violate any of the restrictions and
covenants herein, it shall be lawful for any person or persons owning any lot
in said subdivision to prosecute proceedings at law or in equity against the
person violating or attempting to violate any such restriction and covenant,
either to prevent him or them from so doing or to correct such violation or to
recover damages or other relief for such violation.

 

Instead,
Appellant chose a vigilante approach and took the law where it did not belong: 
into his own hands.  We overrule subpoint IB.

The
evidence is sufficient to show that Appellant damaged the barrier.

          While
conceding that there is evidence in the record that he cut the locks and
removed the barrier, Appellant contends in subpoint 2A that the evidence is nevertheless
insufficient to show that he caused any damage to the barrier pipes or to the
pins that held them because no witness testified to having “actual knowledge as
to who or what caused the damage.”

          The
jury, however, as trier of fact, was entitled to draw reasonable inferences
from the evidence and under the appropriate standard of review, we will uphold
those inferences if they are supported by the evidence viewed in the light most
favorable to the verdict.  See Hooper v. State, 214 S.W.3d 9, 13 (Tex.
Crim. App. 2007).  We look at events occurring before, during, and after the
commission of the offense and may rely on actions of the defendant which show
an understanding and common design to do the prohibited act.  Id.
(citing Cordova v. State, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985), cert.
denied, 476 U.S. 1101 (1986)).  Circumstantial evidence is as
probative as direct evidence in establishing the guilt of an actor, and
circumstantial evidence alone can be sufficient to establish guilt.  Id.
(citing Guevara v. State, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004)).  It
is enough if the jury’s conclusion is warranted by the combined and cumulative
force of all the incriminating circumstances.  Johnson v. State, 871
S.W.2d 183, 186 (Tex. Crim. App. 1993), cert. denied, 511 U.S. 1047
(1994).

          Petty
testified that on January 31, 2009, before the barrier pipes were installed,
Appellant threatened to tear them down.  Karl Towle testified that as he and
other EC members were physically installing the barrier on February 6, 2009, Appellant,
appearing “fairly upset,” drove up, and threatened to knock down “any pipes
installed on the road.”

          Ray
Walker, a resident of Bar VK and member of the EC, testified that he was among
those who put up the barrier and to whom Appellant threatened to take it down. 
Walker further testified that early on the morning of February 8, 2009, two
days after the barrier was installed, Appellant telephoned him wanting him to
unlock the posts so that Appellant could access the lake.  Walker replied that
he would need to get dressed but that he would “absolutely come down there and
let [Appellant] in.”  The airline that Walker worked for called during their
conversation, and Appellant told him to go ahead and take the call.  Walker promised
to call Appellant right back and when he did within fifteen minutes, Appellant’s
wife told Walker that Appellant was down at the pipes going to the lake.  Walker
called Petty.

          The
locks were found cut, one PVC pipe had been snapped off and broken from its
socket with a hole punched through it, and pieces of the barrier were scattered
in the ditch.

          Appellant
admitted to Petty and to law enforcement personnel that he cut the locks.  He
further admitted to Petty that after cutting the locks, he removed the posts
and threw them to the side, but he denied damaging the pipes.

          On
February 11, 2009, after new locks and at least one new pin had been purchased
and the barrier pipes re-installed, Walker was in his front yard when he saw
Appellant drive a car down to the barrier.  He watched as Appellant exited the
car and bent over near one of the barrier posts.  Appellant moved his arms in a
way that made Walker think he was using bolt cutters to cut the locks.  This
time, sheriff’s deputies were called to investigate.

          The
new locks had been cut, the pipes had been removed, the pins were missing, the
steel loops which anchored the posts to the metal sleeve were folded over, and
the wall of one sleeve was bent.

          Texas
Ranger Tracy Murphree testified that upon his review of the investigation, he concluded
that the pipes were damaged at the same time the locks were cut.

          Based
on the evidence in the record—including evidence that Appellant had been a
longstanding and vocal opponent of the barrier—showing that the barrier was
twice found taken down and damaged almost as soon as it was installed and close
in time to instances in which Appellant threatened to take the barrier down,
and that he was seen close to it moving in a manner that looked like he was
using bolt cutters on it, we hold that the jury was able to reasonably infer
that Appellant damaged all the property, not just the locks.  Further, the jury
was free to weigh the evidence and reach a credibility determination that
Appellant had lied when he denied knowing what caused the damage.  Viewed in
the appropriate light, the evidence supports reasonable inferences that in turn
support the verdict.  Therefore, we hold that the evidence is sufficient and we
overrule Appellant’s subpoint 2A.

The
evidence is sufficient to show that the pecuniary loss was as alleged.

          In
subpoint 2B, Appellant takes issue with the jury’s determination that Appellant
caused at least fifty dollars worth of damage.  The amount of pecuniary loss in
a case of criminal mischief causing property damage is the cost of repairing or
restoring the damaged property within a reasonable time after the damage
occurs.  Tex. Penal Code Ann. § 28.06(b) (West 2011); Milo, 748 S.W.2d at
617.

          Towle
testified that after the barrier was damaged the first time, he and other
members of the EC had to buy two new locks and at least one pin to hold the
pipes in the metal sleeve.  He further testified that when the barrier was
damaged the second time, they had to purchase a new PVC pipe, a new cap, new
reflective tape, and two new locks with six keys for the EC members and the
airport manager; that two new cross pins had to be constructed; and that one of
the members had to prepare and paint the new PVC pipe.  He produced receipts
which were admitted in evidence.  The cost to replace the first two padlocks
damaged totaled $15.94 before sales tax.  The cost of replacing the locks the
second time, sales tax again excluded, was $15.32.  The keys cost $4.74, the PVC
cap cost $7.35, the PVC pipe cost $8.50, the pins cost $4.68, and the reflective
tape cost $8.99.  We calculate that these items before sales tax totaled
$65.52.  On top of that, Towle testified that the sales tax on these items was
8.25%.  Viewed in the light most favorable to the verdict, the evidence is
sufficient to support the jury’s finding beyond a reasonable doubt that the
pecuniary loss was greater than fifty dollars.  Accordingly, we overrule
subpoint 2B.

Vaughn
Gary Petty’s Name on the State’s Witness List

          In
Appellant’s third and final point he complains that the State listed Petty’s
name on the witness list as Gary Petty instead of his full legal name, Vaughn
Gary Petty, and that he was unfairly surprised when Petty was sworn in and testified. 
At any stage of trial, the State should disclose the names of all witnesses it
intends to call.  Young v. State, 547 S.W.2d 23, 27 (Tex. Crim. App.
1977).  It is within the trial court’s discretion to decide to allow a witness
not on the State’s witness list to testify.  Martinez v. State, 867
S.W.2d 30, 39 (Tex. Crim. App. 1993), cert. denied, 512 U.S. 1246
(1994); Lemasurier v. State, 91 S.W.3d 897, 900 (Tex. App.––Fort Worth
2002, pet. ref’d).  Among the factors a reviewing court considers
in determining whether there has been an abuse of discretion are:  (1) a
showing of bad faith on the part of the prosecutor in failing to disclose the
witness’s name before trial; and (2) whether the defendant could have
reasonably anticipated that the witness would testify, although his or her name
was not included on the witness list.  Lemasurier, 91 S.W.3d at 900–01 (citing
Nobles v. State, 843 S.W.2d 503, 514–15 (Tex. Crim. App. 1992); Stoker
v. State, 788 S.W.2d 1, 15 (Tex. Crim. App. 1989), cert. denied, 498
U.S. 951 (1990)).

          The
State, in its indictment, alleged the owner of the damaged property as Vaughn
Petty.  The record indicates that three days after Appellant made his request
for discovery and well in advance of trial, the State provided a witness list
identifying a witness as “Vaughn Gary Petty,” followed by “Gary” in
parenthesis.  The State apparently provided a second list to Appellant just
prior to jury selection that listed “Gary Petty” as the first witness.  We hold
that on the record before us, Petty’s name was on the witness list provided to
Appellant and that Appellant reasonably could have anticipated that Petty would
testify.  We overrule Appellant’s third point.

Conclusion

          Having
overruled all of Appellant’s points, we affirm the trial court’s judgment.

 

 

 

LEE GABRIEL

JUSTICE

 

PANEL: 
DAUPHINOT,
GARDNER, and GABRIEL, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED: 
August 4, 2011









[1]See Tex. R. App. P. 47.4.





[2]Tex. Penal Code Ann. §
28.03(a)(1), (b)(2) (West 2011).





[3]Appellant did not attend
this meeting.





[4]See Tex. Penal Code
Ann. § 28.03(b)(2).