

# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

### NO. 02-10-00042-CR

KEN JANNERETH                                                      APPELLANT

V.

THE STATE OF TEXAS                                                       STATE

----------

## FROM COUNTY CRIMINAL COURT NO. 5 OF DENTON COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### Introduction

Appellant Ken Jannereth appeals his conviction for criminal mischief,[2] claiming in three points that the evidence is insufficient and that the State's witness list was inaccurate. We affirm.

---

[1]*See* Tex. R. App. P. 47.4.

[2]Tex. Penal Code Ann. § 28.03(a)(1), (b)(2) (West 2011).

**Factual and Procedural Background**

Appellant resides in the Bar VK Air Ranch Estates (Bar VK) and is a member of its homeowners' association (HOA).  The HOA holds a warranty deed for Bar VK's common areas, which include a private lake and a road providing access to the lake (the lake road).

The HOA holds annual meetings in October.  Members who attended[3] the October 2008 meeting voted unanimously to erect a barrier on the lake road in response to residents' complaints about use of the lake by non-residents.  The barrier consisted of twin PVC pipes inserted vertically into and locked onto metal sleeves buried into the ground.  The barrier was designed to curtail access by large vehicles yet still allow small vehicles such as golf carts and ATVs to pass through.  Each executive committee (EC) member of the HOA was given a key with which to unlock the padlocks and remove the pipes whenever a resident wished to drive a larger vehicle to the lake.

On January 31, 2009, Appellant told HOA president Vaughn Gary Petty (Petty), that if the barrier was installed, Appellant would tear it down.  On February 6, 2009, Appellant made similar statements to EC members while they constructed the barrier.  Two days later, on February 8, 2009, EC members found the barrier pipes removed from the metal sleeves and strewn alongside the

_____

[3]Appellant did not attend this meeting.

2

road.  They restored the barrier, and on February 11, 2009, found it removed once more and broken as well.

Appellant admitted to Petty and to law enforcement personnel that he had cut the locks and dismantled the barrier pipes on both occasions, but he denied that he had done any other damage to the barrier.

Appellant was charged with criminal mischief, tried by a jury, and convicted.  The trial court, assessing punishment for the Class B misdemeanor offense,[4] ordered him to pay a fine and serve 180 days in the county jail, probated for two years.

### Sufficiency of the Evidence

In his first two points, Appellant challenges the legal and factual sufficiency of the evidence to support his conviction.  The court of criminal appeals has held that there is no meaningful distinction between the standards of review for determining whether evidence at trial is legally sufficient as opposed to factually sufficient.  *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (overruling *Clewis v. State*, 922 S.W.2d 126 (Tex. Crim. App. 1996)). Accordingly, the standard set out in *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781 (1979), is the "only standard that a reviewing court should apply in determining whether evidence is sufficient to support each element of  a criminal offense that the State is required to prove beyond a reasonable doubt."  *Id.* at

---

[4]*See* Tex. Penal Code Ann. § 28.03(b)(2).

3

895; *see Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789.  Applying the *Jackson* standard to Appellant's first two points, we must consider the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt.  *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

The jury found Appellant guilty of criminal mischief that caused damage of fifty dollars or more but less than $500.  A person commits this offense if he intentionally or knowingly damages or destroys tangible property without the owner of that property's effective consent and in so doing causes a pecuniary loss of fifty dollars or more but less than $500.  *See* Tex. Penal Code Ann. § 28.03(a)(1), (b)(2).

Appellant contends that the evidence is insufficient because (1) the State did not prove that he was not an owner of the damaged property, (2) he had a right to take down the barrier in order to enforce a restrictive covenant, (3) no witness had "actual knowledge" that he caused the damage, and (4) the pecuniary loss from the damage was less than that alleged by the State.

### *The evidence is sufficient to show that Petty was the owner.*

In subpoint IA, Appellant argues that the State failed to meet its burden to prove that he was not an owner of the property the jury found him guilty of damaging.  As the State correctly points out, however, the State was not required to prove a negative.  Contrary to Appellant's claim, in order to sustain a guilty

4

verdict the State had to prove ownership by the complainant, not non-ownership by Appellant.  An owner is a person who has title to the property, possession of the property, whether lawful or not, or a greater right to possession of the property than the person charged with damaging or destroying the property.  *See* Tex. Penal Code Ann. § 1.07(a)(35)(A) (West 2011).  Ownership may be proven by oral testimony.  *Smith v. State*, 638 S.W.2d 476, 478 (Tex. Crim. App. 1982); *Milo v. State*, 748 S.W.2d 614, 616 (Tex. App.—San Antonio 1988, no pet.).

Article 21.08 of the code of criminal procedure provides in part:

> Where one person owns the property, and another person has the possession of the same, the ownership thereof may be alleged to be in either.  Where property is owned in common, or jointly, by two or more persons, the ownership may be alleged to be in all or either of them . . . .

Tex. Code Crim. Proc. Ann. art. 21.08 (West 2009).  The court of criminal appeals has frequently said that this statute applies to property owned by a corporation.  *Eaton v. State*, 533 S.W.2d 33, 34 (Tex. Crim. App. 1976).  The court has also said that when the property referred to in an indictment belongs to a corporation, it is not only permissible but also the better pleading practice to allege ownership in a natural person acting for the corporation.  *Id*. (citing *Castillo v. State*, 469 S.W.2d 572, 573 (Tex. Crim. App. 1971); *Walling v. State*, 437 S.W.2d 563, 564 (Tex. Crim. App. 1969)).

Here, the indictment alleged Petty as the owner of the subject property.  The record shows that the HOA is a non-profit corporation holding a warranty deed to the common areas of the Bar VK.  Petty testified that he was president of

the HOA during October 2008. Because the State alleged Petty as the owner and the evidence showed that he was the president of the HOA, that the HOA was a non-profit corporation, and that Petty acted on its behalf during the relevant time period, we hold the evidence is sufficient to show ownership as alleged and we overrule subpoint IA.

In subpoint IB, Appellant argues that "the jury erred when it did not consider Appellant's property interest as a defense." In other words, he, as one with an ownership interest, gave effective consent to himself to damage the pipes. We have already held that the evidence is sufficient to establish that Petty, acting on behalf of the HOA, was the owner of the subject property. The most that the evidence shows by virtue of Appellant's membership in the HOA is that he enjoyed a privilege to use the HOA's common areas. But a privilege to use is akin to a license; it is not ownership. *See Settegast v. Foley Bros. Dry Goods Co.*, 114 Tex. 452, 455, 270 S.W. 1014, 1016 (1925) (defining license as a privilege or authority given to one or retained by one to do some act or acts on land belonging to another, but which does not amount to an interest in the land itself); *Samuelson v. Alvarado*, 847 S.W.2d 319, 323 (Tex. App.—El Paso, no writ) (1993) (same). Moreover, even if we were to accept Appellant's claim that he had some ownership interest in the property, which we do not, Appellant concedes that the penal code provides that "[i]t is no defense to prosecution [that he] has an interest in the property damaged or destroyed if another person also has an interest that the actor is not entitled to infringe." *See* Tex. Penal Code

6

Ann. § 28.05 (West 2011). As stated above, the evidence is sufficient to establish that Petty acted for the HOA as the owner. Furthermore, Petty specifically testified that no one had his consent to damage the pipe, cut the locks, or bend the pipes down. There is no evidence in the record showing that Appellant was entitled to infringe upon the HOA's ownership interest in the property despite his claim that he was justified in damaging the HOA's property in order to enforce its covenants.

Without citing any authority for his position, Appellant argues that he "had 'effective consent' to cut the locks effective[ly] blocking the roadway pursuant to the deed restrictions and the covenants running with the land." He makes several references in his brief to the original deed restrictions admitted as State's Exhibit 2. A careful reading of that exhibit, however, reveals that the deed restrictions do not authorize the self-help remedy Appellant employed and therefore do not provide, as he claims, any defense to his criminal conduct. On the other hand, the deed restrictions do provide the following remedy, one that drastically differs from the one chosen by Appellant:

> If any person or persons shall violate or attempt to violate any of the restrictions and covenants herein, it shall be lawful for any person or persons owning any lot in said subdivision to prosecute proceedings at law or in equity against the person violating or attempting to violate any such restriction and covenant, either to prevent him or them from so doing or to correct such violation or to recover damages or other relief for such violation.

Instead, Appellant chose a vigilante approach and took the law where it did not belong: into his own hands. We overrule subpoint IB.

7

***The evidence is sufficient to show that Appellant damaged the barrier.***

While conceding that there is evidence in the record that he cut the locks and removed the barrier, Appellant contends in subpoint 2A that the evidence is nevertheless insufficient to show that he caused any damage to the barrier pipes or to the pins that held them because no witness testified to having "actual knowledge as to who or what caused the damage."

The jury, however, as trier of fact, was entitled to draw reasonable inferences from the evidence and under the appropriate standard of review, we will uphold those inferences if they are supported by the evidence viewed in the light most favorable to the verdict. *See Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). We look at events occurring before, during, and after the commission of the offense and may rely on actions of the defendant which show an understanding and common design to do the prohibited act. *Id*. (citing *Cordova v. State*, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985), *cert. denied*, 476 U.S. 1101 (1986)). Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Id*. (citing *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004)). It is enough if the jury's conclusion is warranted by the combined and cumulative force of all the incriminating circumstances. *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993), *cert. denied*, 511 U.S. 1047 (1994).

Petty testified that on January 31, 2009, before the barrier pipes were installed, Appellant threatened to tear them down. Karl Towle testified that as he and other EC members were physically installing the barrier on February 6, 2009, Appellant, appearing "fairly upset," drove up, and threatened to knock down "any pipes installed on the road."

Ray Walker, a resident of Bar VK and member of the EC, testified that he was among those who put up the barrier and to whom Appellant threatened to take it down. Walker further testified that early on the morning of February 8, 2009, two days after the barrier was installed, Appellant telephoned him wanting him to unlock the posts so that Appellant could access the lake. Walker replied that he would need to get dressed but that he would "absolutely come down there and let [Appellant] in." The airline that Walker worked for called during their conversation, and Appellant told him to go ahead and take the call. Walker promised to call Appellant right back and when he did within fifteen minutes, Appellant's wife told Walker that Appellant was down at the pipes going to the lake. Walker called Petty.

The locks were found cut, one PVC pipe had been snapped off and broken from its socket with a hole punched through it, and pieces of the barrier were scattered in the ditch.

Appellant admitted to Petty and to law enforcement personnel that he cut the locks. He further admitted to Petty that after cutting the locks, he removed the posts and threw them to the side, but he denied damaging the pipes.

9

On February 11, 2009, after new locks and at least one new pin had been purchased and the barrier pipes re-installed, Walker was in his front yard when he saw Appellant drive a car down to the barrier. He watched as Appellant exited the car and bent over near one of the barrier posts. Appellant moved his arms in a way that made Walker think he was using bolt cutters to cut the locks. This time, sheriff's deputies were called to investigate.

The new locks had been cut, the pipes had been removed, the pins were missing, the steel loops which anchored the posts to the metal sleeve were folded over, and the wall of one sleeve was bent.

Texas Ranger Tracy Murphree testified that upon his review of the investigation, he concluded that the pipes were damaged at the same time the locks were cut.

Based on the evidence in the record—including evidence that Appellant had been a longstanding and vocal opponent of the barrier—showing that the barrier was twice found taken down and damaged almost as soon as it was installed and close in time to instances in which Appellant threatened to take the barrier down, and that he was seen close to it moving in a manner that looked like he was using bolt cutters on it, we hold that the jury was able to reasonably infer that Appellant damaged all the property, not just the locks. Further, the jury was free to weigh the evidence and reach a credibility determination that Appellant had lied when he denied knowing what caused the damage. Viewed in the appropriate light, the evidence supports reasonable inferences that in turn

10

support the verdict. Therefore, we hold that the evidence is sufficient and we overrule Appellant's subpoint 2A.

***The evidence is sufficient to show that the pecuniary loss was as alleged.***

In subpoint 2B, Appellant takes issue with the jury's determination that Appellant caused at least fifty dollars worth of damage. The amount of pecuniary loss in a case of criminal mischief causing property damage is the cost of repairing or restoring the damaged property within a reasonable time after the damage occurs. Tex. Penal Code Ann. § 28.06(b) (West 2011); *Milo*, 748 S.W.2d at 617.

Towle testified that after the barrier was damaged the first time, he and other members of the EC had to buy two new locks and at least one pin to hold the pipes in the metal sleeve. He further testified that when the barrier was damaged the second time, they had to purchase a new PVC pipe, a new cap, new reflective tape, and two new locks with six keys for the EC members and the airport manager; that two new cross pins had to be constructed; and that one of the members had to prepare and paint the new PVC pipe. He produced receipts which were admitted in evidence. The cost to replace the first two padlocks damaged totaled $15.94 before sales tax. The cost of replacing the locks the second time, sales tax again excluded, was $15.32. The keys cost $4.74, the PVC cap cost $7.35, the PVC pipe cost $8.50, the pins cost $4.68, and the reflective tape cost $8.99. We calculate that these items before sales tax totaled $65.52. On top of that, Towle testified that the sales tax on these items was

8.25%. Viewed in the light most favorable to the verdict, the evidence is sufficient to support the jury's finding beyond a reasonable doubt that the pecuniary loss was greater than fifty dollars. Accordingly, we overrule subpoint 2B.

**Vaughn Gary Petty's Name on the State's Witness List**

In Appellant's third and final point he complains that the State listed Petty's name on the witness list as Gary Petty instead of his full legal name, Vaughn Gary Petty, and that he was unfairly surprised when Petty was sworn in and testified. At any stage of trial, the State should disclose the names of all witnesses it intends to call. *Young v. State*, 547 S.W.2d 23, 27 (Tex. Crim. App. 1977). It is within the trial court's discretion to decide to allow a witness not on the State's witness list to testify. *Martinez v. State*, 867 S.W.2d 30, 39 (Tex. Crim. App. 1993), *cert. denied*, 512 U.S. 1246 (1994); *Lemasurier v. State*, 91 S.W.3d 897, 900 (Tex. App.—Fort Worth 2002, pet. ref'd). Among the factors a reviewing court considers in determining whether there has been an abuse of discretion are: (1) a showing of bad faith on the part of the prosecutor in failing to disclose the witness's name before trial; and (2) whether the defendant could have reasonably anticipated that the witness would testify, although his or her name was not included on the witness list. *Lemasurier*, 91 S.W.3d at 900–01 (citing *Nobles v. State*, 843 S.W.2d 503, 514–15 (Tex. Crim. App. 1992); *Stoker v. State*, 788 S.W.2d 1, 15 (Tex. Crim. App. 1989), *cert. denied*, 498 U.S. 951 (1990)).

12

The State, in its indictment, alleged the owner of the damaged property as Vaughn Petty. The record indicates that three days after Appellant made his request for discovery and well in advance of trial, the State provided a witness list identifying a witness as "Vaughn Gary Petty," followed by "Gary" in parenthesis. The State apparently provided a second list to Appellant just prior to jury selection that listed "Gary Petty" as the first witness. We hold that on the record before us, Petty's name was on the witness list provided to Appellant and that Appellant reasonably could have anticipated that Petty would testify. We overrule Appellant's third point.

## Conclusion

Having overruled all of Appellant's points, we affirm the trial court's judgment.


LEE GABRIEL
JUSTICE

PANEL: DAUPHINOT, GARDNER, and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: August 4, 2011